**CITY OF PIQUA, Appellee,**

v.

**OHIO FARMERS INSURANCE COMPANY, Appellant.**

[Cite as *Piqua v. Ohio Farmers Ins. Co.* (1992), 84 Ohio App.3d 619.]

Court of Appeals of Ohio,
Miami County.

No. 92–CA–18.

Decided Dec. 31, 1992.

*Stephen E. Klein,* for appellee.

*Dennis D. Liston* and *Thomas J. Novack,* for appellant.

*Per Curiam.*

Ohio Farmers Insurance Company appeals from the order of the trial court referring this case to arbitration. The trial court found that Ohio Farmers, as surety, was bound by an arbitration provision in the general contract between its principal, Hughes–Bechtol, Inc., and the city of Piqua. For the reasons stated below, we overrule the assignment of error and affirm the judgment of the trial court.

### I

On April 25, 1986, Hughes–Bechtol entered into the primary contract with Piqua for installation of a district steam-heating distribution system. That contract contained an arbitration clause, requiring that "disputes, claims, or other matters in question that cannot be resolved in a reasonable period of time between the owner, the owner's agent, and the contractor arising from the provisions and performance of this contract shall be decided by arbitration."

Ohio Farmers, as surety, and Hughes–Bechtol, as principal, executed a performance bond "in the penal sum of Six Hundred Eight Thousand Dollars," to be discharged upon Hughes–Bechtol's performance of its obligation in the principal contract. The performance bond provided, in part, that

"THE CONDITION OF THE ABOVE OBLIGATIONS IS SUCH that whereas the above named Principal did on the 25th day of April 1986, enter into a contract with the City of Piqua, Ohio for Installation of District Heating System Distribution System Contract No. 8524–00–03 which said contract is made a part of this bond, the same as though set forth herein."

The bond agreement further provided that "it [is] expressly understood and agreed that the liability of the surety for any and all claims hereunder shall in no event exceed the penal amount of this obligation as herein stated."

A dispute arose between Piqua and Hughes–Bechtol concerning the primary contract. The dispute was submitted to arbitration, as required by the contract between those parties. An award was rendered in favor of Piqua in the amount of $46,301, plus $637.50 in costs.

Hughes–Bechtol was in Chapter 11 bankruptcy when the arbitration award was made. Upon review of the award, the bankruptcy court stayed any further proceedings on Piqua's claims against Hughes–Bechtol, except as to $10,000 retained and in the hands of Piqua.

Piqua filed this action against Ohio Farmers, seeking the amount awarded it by the arbitration panel and seeking further damages of $99,960. Upon Piqua's motion, the trial court stayed further proceedings and referred the matter for arbitration. Ohio Farmers has filed a timely notice of appeal from that order.

## II

Appellant presents a single assignment of error:

"The trial court erred in staying this proceeding and referring this matter to arbitration."

The law favors and encourages arbitration. *Brennan v. Brennan* (1955), 164 Ohio St. 29, 57 O.O. 71, 128 N.E.2d 89. Provisions in a written contract to settle a controversy arising out of a contract or a refusal by one of the parties to perform under it are valid and enforceable. See R.C. 2711.01. However, a party cannot be compelled to arbitrate a dispute that it has not agreed to arbitrate. *Teramar Corp. v. Rodier Corp.* (1987), 40 Ohio App.3d 39, 531 N.E.2d 721; *WindowMaster Corp. v. B.G. Danis Co.* (S.D.Ohio 1981), 511 F.Supp. 157, 23 O.O.3d 83.

Ohio Farmers is bound to arbitrate this controversy only if it has assumed a duty to do so. On the facts before us, that duty can only arise from the provision in its surety bond incorporating the contract between Piqua and Hughes–Bechtol. In order to create that duty, the provision must incorporate the obligation to arbitrate set up in the principal contract.

While the incorporation provision stated in the performance bond agreement is general in nature, the character of the duties of the surety are such that the arbitration provision of the principal contract is carried over to the performance bond by the very nature of the dispute. Piqua seeks compensation for Hughes–Bechtol's failure to perform. Ohio Farmers promised to pay for the

losses to Piqua occasioned by that failure. Performance bonds required for public contracts are generally liberally construed to effect the statutory purposes. See 1 Williston on Contracts (4 Ed.1990), Section 2.19(e). Among those purposes are the swift resolution of disputes and compensation of the public for the loss it has sustained. Arbitration will assist in achieving those purposes. It was among the obligations assumed by the surety where it incorporated the principal contract into its agreement. We see no error.

The assignment of error is overruled. The judgment of the trial court will be affirmed.

*Judgment affirmed.*

WOLFF and WILSON, JJ., concur.

GRADY, J., dissents.

GRADY, Judge, dissenting.

I must respectfully dissent from the decision of the majority. I believe that the incorporation provision identifies only the principal contract. It does not impose on the surety any of the duties of the principal.

The duties of a surety may be co-extensive with those of the principal, to perform if the principal does not, or its obligation may be only to compensate the creditor for the principal's non-performance.

Hughes–Bechtol made two promises to Piqua. In the principal contract it promised to install the steam system and to arbitrate disputes. In the performance bond it bound itself to pay a sum as penalty should it fail to perform under the principal contract.

Ohio Farmers likewise bound itself to pay the penal sum, but only if Hughes–Bechtol both failed to perform and failed to pay the penal sum as it promised. The promise of Ohio Farmers to pay the penal sum was co-extensive with the promise of Hughes–Bechtol in the same regard. The promise of Ohio Farmers was not co-extensive with the promises of Hughes–Bechtol under the principal contract.

A penal bond is a promise to pay a sum of money as a penalty in the event of non-performance. The promise is voided when performance takes place, and there is no obligation to pay the penalty unless performance has failed.

On the foregoing analysis, I believe that the general terms of the incorporation provision operate to identify only the principal contract and the duties of the principal therein, the breach of which triggers the obligations of either principal or surety to pay the penalty to which they are bound. The incorporation provision does not create a co-extensive obligation in the surety to perform under

the principal contract or to be bound by the promises of the principal contractor, including its promise to arbitrate disputes. At most, the surety is obligated to satisfy only to the extent of its promise, and, as a penalty, the principal's failure to perform.

I would reverse and remand.