OPINION
{¶ 1} Plaintiffs-appellants, Rickie A. and Ronald E. McGuffey, appeal a judgment of the Butler County Court of Common Pleas, confirming the arbitration award of defendants-appellees, LensCrafters, Inc., and Jacalyn Campton.
 {¶ 2} In 1990, Rickie McGuffey began working for LensCrafters, Inc., as a buffer in the packing and quality assurance department of its technology center. On May 29, 1998, Rickie signed an agreement with LensCrafters, acknowledging that she had received copies of the "LensCrafters Associate Handbook," and the company's "Dispute Resolution Process," and that she had read those documents and agreed with their terms.
 {¶ 3} LensCrafters' Dispute Resolution Process involves a two-step process. Under the first step, known as the company's "Open Door Policy," an employee is permitted to talk to his or her supervisor if the employee has a dispute related to the business. If the employee feels he or she has not been listened to, the employee can talk to his or her supervisor's superior and so on, taking the matter "all the way up the management chain."
 {¶ 4} If the dispute is not resolved through the Open Door process, the next step for the employee is to request arbitration to resolve the dispute. If the employee was hired on or after
August 1, 1993, the employee or LensCrafters can file an appeal of an arbitrator's decision if permitted by law in the employee's particular circumstance. However, neither the employee nor LensCrafters may file a lawsuit in court or take part in a class action lawsuit because they are bound by the arbitrator's decision. Employees hired on or after August 1, 1993 can ask the court to decide whether the arbitrator made a mistake in deciding his or her case, but the employee cannot ask the court to set aside the arbitrator's decision and retry his or her case.
 {¶ 5} However, if the employee was hired before August 1, 1993, and had not previously signed a binding arbitration agreement with LensCrafters, then the employee or LensCrafters can (1) "appeal the arbitrator's decision if permitted by law in [the employee's] particular circumstance," or (2) "refuse to accept the arbitrator's decision and file a lawsuit in court." Employees hired before August 1, 1993 agree that before they file a lawsuit against LensCrafters, they will first "take all complaints through the two-step Dispute Resolution Process, plus any appeals allowed by law."
 {¶ 6} On February 5, 1999, Rickie attempted to speak with her immediate supervisor at LensCrafters, Jacalyn Campton, about a problem with eyeglass parts breaking. Campton allegedly grabbed Rickie by the neck and shoulder, twisted her around, and pushed her in the back of her neck. Campton's actions allegedly caused Rickie neck and back injuries and aggravated pre-existing conditions.
 {¶ 7} Rickie filed a claim seeking compensation for her injuries from the Ohio Bureau of Workers' Compensation. As a result of that claim, Rickie received temporary total benefits and wage-loss compensation. Shortly after the incident, LensCrafters told Rickie that she would be required to use her accrued personal leave while she was absent from work. On August 25, 1999, before Rickie returned to work, LensCrafters fired her pursuant to its general leave policy.
 {¶ 8} On February 7, 2000, Rickie and her husband, Ronald McGuffey (hereinafter, referred to, collectively, as "appellants") brought a four-count complaint against LensCrafters and Campton, alleging that (1) LensCrafters wrongfully discharged Rickie in retaliation for her filing a worker's compensation claim; (2) Campton committed an assault and battery against Rickie, causing her to suffer damages; (3) LensCrafters committed an intentional tort against Rickie through Campton's actions that Campton committed while acting within the scope of her employment; and (4) Ronald suffered the loss of Rickie's services and consortium, as a result of the incident, and will further suffer such losses in the future.
 {¶ 9} LensCrafters and Campton (hereinafter, referred to, collectively, as "appellees") did not answer the complaint. Instead, they moved to dismiss appellants' complaint or, in the alternative, to stay the proceedings and to compel arbitration of appellants' claims, including their loss of consortium claim, pursuant to the terms of the Dispute Resolution Process that were incorporated in the agreement that Rickie had signed as a condition of her employment.
 {¶ 10} On July 7, 2000, the trial court issued a decision and entry, granting appellees' motion for a stay of the proceedings pending arbitration. The trial court ordered that Rickie's claims against appellees be submitted to arbitration, pursuant to the terms of the arbitration agreement between LensCrafters and its employees. However, the trial court found that it lacked authority to refer Ronald's loss of consortium claim against appellees to arbitration since Ronald was not a party to the arbitration agreement and, therefore, could not be forced into arbitration. After finding that the "vitality" of Ronald's loss of consortium claim was dependent upon the outcome of Rickie's claims in arbitration, the trial court stated that it would "not proceed with the loss of consortium claim unless the arbitrator renders a decision in favor of [Rickie]." The trial court concluded its decision by stating that "[u]pon [Ronald]'s request to activate this case, the Court shall proceed to dispose of the merits of [Ronald]'s claims, consistent with the arbitrator's decision on [Rickie]'s claims. This case shall be withdrawn from this Court's active docket until reactivated by [Ronald] as provided herein."
 {¶ 11} Appellants appealed the trial court's order staying the proceedings pending arbitration to this court, arguing, among other things, that the trial court erred by sending the case to arbitration since the dispute resolution process and its arbitration provisions were unenforceable on grounds that they constituted an "adhesion contract," were "against public policy," and were "executed under duress." This court overruled all of appellants' arguments and affirmed the trial court's order.McGuffey v. LensCrafters, Inc. (2001), 141 Ohio App.3d 44.
 {¶ 12} At about the same time appellants were instituting their appeal from the trial court's order staying the proceedings pending arbitration, Rickie, on August 1, 2000, filed a demand for arbitration with the American Arbitration Association, regarding her dispute with appellees. Between August 24, 2001 and November 7, 2003, the case was held in abeyance due to the illness of Rickie's counsel. On September 14, 2004, an arbitration hearing was held on Rickie's claims. On November 15, 2004, the arbitrator denied all of Rickie's claims against appellees.
 {¶ 13} On December 1, 2004, appellants moved "to vacate the stay of proceedings" and "to activate this case." In support of their motion, appellants argued that under the terms of the parties' agreement, Rickie was entitled to "refuse to accept the arbitrator's decision and file a lawsuit in court[.]" Therefore, appellants requested the trial court to lift its stay of the proceedings so that they could proceed with the lawsuit they had previously filed. On December 13, 2004, appellees filed an application for confirmation of the arbitrator's award.
 {¶ 14} On January 19, 2005, the trial court considered oral arguments by the parties concerning the motions pending before it. At the close of the arguments, the trial court announced its intention to overrule appellants' motion to vacate the stay and to activate this case, and to grant appellees' application for confirmation of the arbitrator's award. The trial court directed the parties to submit an agreed entry reflecting its decision. On February 10, 2005, appellants moved the trial court to reconsider the issues raised by their motion to vacate the stay of proceedings and to activate this case, based upon "a further review" of the provisions of the parties' arbitration agreement and various decisions, including Schaefer v. Allstate Ins. Co.
(1992), 63 Ohio St.3d 708.
 {¶ 15} On February 15, 2005, the trial court issued a judgment entry, denying appellants' motion to vacate the stay of proceedings and to activate this case, and granting appellees' application for confirmation of the arbitration award. The trial court entered judgment in favor of appellees and against Rickie, as to her claims, pursuant to R.C. 2711.09, and entered judgment in favor of appellees and against Ronald, as to his derivative loss of consortium claim. On March 1, 2005, the trial court overruled appellants' motion for reconsideration.
 {¶ 16} Appellants now appeal, raising the following assignment of error:
 {¶ 17} Assignment of Error No. 1:
 {¶ 18} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANTS WHEN IT FAILED UPON REQUEST TO VACATE ITS STAY OF PROCEEDINGS AND TO ALLOW THE ACTION TO PROCEED."
 {¶ 19} Appellants argue that the trial court erred in failing to vacate its stay of the proceedings and to allow their lawsuit against appellees to proceed. In support of their argument, appellants first assert that, under Schaefer v. Allstate Ins.Co., 63 Ohio St.3d 708, the provisions of the arbitration agreement between LensCrafters and its employees like Rickie are unenforceable. Alternatively, appellants assert that the terms of the arbitration agreement between LensCrafters and its employees permit employees like Rickie, who were hired before August 1, 1993, to refuse to accept the arbitrator's decision and to file a lawsuit in court, and, therefore, the trial court erred by not granting their motion to vacate the stay of proceedings and to activate this case.
 {¶ 20} Initially, we disagree with appellants' argument that the arbitration agreement between LensCrafters and its employees like Rickie is unenforceable pursuant to Schaefer. In that case, Justice Douglas, writing for a three-justice plurality stated:
 {¶ 21} "`Binding arbitration' is a redundancy. `Nonbinding arbitration' is a contradiction in terms. For a dispute resolution procedure to be classified as `arbitration,' the decision rendered must be final, binding and without any qualification or condition as to the finality of an award whether or not agreed to by the parties. * * * When parties agree to make an award rendered in an `arbitration' procedure appealable, the proceeding is no longer an `arbitration.'" Schaefer,63 Ohio St.3d at 711.
 {¶ 22} Applying these principles to the case before the court, Justice Douglas held:
 {¶ 23} "[W]hatever alternative-dispute-resolution procedure is provided for [in the insurance policy at issue], that procedure is not arbitration. The procedure does not makeany and all awards final and binding. Furthermore, it is apparent that the insurance provision in question here represents a clear attempt to bypass R.C. Chapter 2711 by setting up an `escape hatch' for any party disappointed with an award exceeding a specified amount. In doing so, the provision completely frustrates the purposes of `arbitration' and every public policy reason favoring the arbitration system of dispute resolution. By permitting a trial de novo in some instances, the provision unnecessarily subjects the parties to multiple proceedings in a variety of forums, increases costs, extends the time consumed in ultimately resolving a dispute, and eviscerates any advantage of unburdening crowded court dockets. Accordingly, since the provision is not a provision providing for true arbitration, the entire agreement to `arbitrate' clause is unenforceable." (Emphasis sic.) Schaefer, 63 Ohio St.3d at 716.
 {¶ 24} Citing the above language, appellants argue that the arbitration agreement between LensCrafters and its employees, like Rickie, who were hired before August 1, 1993 and who were thus subject to the nonbinding arbitration provision in the agreement, is not a "true" arbitration agreement since it contains an "escape hatch" similar to the one found objectionable by the three-justice plurality in Schaefer. Therefore, they argue that the arbitration agreement between LensCrafters and its employees like Rickie is unenforceable, like the one inSchaefer was found to be. We disagree with this argument.
 {¶ 25} As we have noted, the principles in Schaefer upon which appellants rely were only agreed to by three of the justices on the Ohio Supreme Court. See Schaefer,63 Ohio St.3d at 719. Three other justices concurred with the court's result in the case, but rejected the plurality's statements on the principles of arbitration. Id. In his concurring opinion that was joined by two other justices, Justice Wright stated, in pertinent part, "[i]f the issue were properly presented to the court, I would hold that an agreement that provides for nonbinding arbitration will be enforced to the extent possible under the law, and the parties will be held to their agreement to arbitrate unless the agreement is unconscionable or otherwise revocable as a matter of law or equity." Schaefer, 63 Ohio St.3d at 721 (J. Wright, concurring in judgment only).
 {¶ 26} As the foregoing makes clear, it is apparent that theSchaefer court was evenly divided on the issue of the enforceability of agreements providing for nonbinding arbitration. Therefore, Schaefer provides little, if any, support for appellants' claim that the arbitration agreement between LensCrafters and its employees like Rickie is unenforceable.
 {¶ 27} Having reviewed the arbitration agreement between LensCrafters and its employees, as well as the relevant provisions of R.C. Chapter 2711, we conclude that the arbitration agreement between LensCrafters and its employees like Rickie is enforceable under R.C. 2711.01, notwithstanding the plurality opinion in Schaefer. However, we also conclude that the trial court erred by ignoring a key provision in the parties' arbitration agreement.
 {¶ 28} R.C. 2711.01(A) provides that "any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, or arising after the agreement to submit, from a relationship then existing between them or that they simultaneously create, shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of the contract." "The law favors and encourages arbitration." Piqua v. Ohio Farmers Ins. Co. (1992),84 Ohio App.3d 619, 621, citing Brennan v. Brennan (1955),164 Ohio St. 29. "Nonetheless, arbitration is a matter of contract and, in spite of the strong policy in its favor, a party cannot be compelled to arbitrate any dispute which he has not agreed to submit [to arbitration]." Teramar Corp. v. Rodier Corp. (1987),40 Ohio App.3d 39, 40. See, also, Piqua v. Ohio Farmers Ins.Co., 84 Ohio App.3d at 621 ("a party cannot be compelled to arbitrate a dispute that it has not agreed to arbitrate"), citingTeramar Corp., and WindowMaster Corp. v. B.G. Danis Co.
(S.D.Ohio 1981), 511 F.Supp. 157.
 {¶ 29} In this case, LensCrafters had an arbitration agreement with all of its employees requiring them first to attempt to settle any dispute they had with the company through the company's so-called "Open Door Process," and then, if that fails, to submit the dispute to arbitration. Under the terms of the arbitration agreement, if the employee was hired on orafter August 1, 1993, then the arbitrator's decision is essentially considered final, and the employee has only a limited right to appeal the arbitrator's ruling. However, if the employee was hired before August 1, 1993, then the employee may refuse to accept the arbitrator's decision and file a lawsuit in court.
 {¶ 30} Here, the trial court properly ordered Rickie to submit her claims against appellees to arbitration, pursuant to the terms of the parties' arbitration agreement. However, the trial court improperly found that Rickie was subject to binding arbitration. Because Rickie was hired before August 1, 1993, she was entitled to refuse to accept the arbitrator's decision and to file a lawsuit against the company in court. The trial court, without offering any explanation, ignored this provision in the parties' arbitration agreement. This decision constituted error. Just as a party cannot be compelled to arbitrate a dispute that it has not agreed to arbitrate, see, e.g., Piqua v. Ohio FarmersIns. Co., 84 Ohio App.3d at 621, a party cannot be compelled to submit a dispute to binding arbitration where it has not agreed to submit the controversy to binding arbitration. Consequently, the trial court erred by confirming appellees' arbitration award and by failing to grant appellants' motion to vacate its stay of proceedings and to activate this case.
 {¶ 31} Appellees argue that the trial court's decision should be affirmed pursuant to the "law of the case" doctrine because appellants failed to assert in their interlocutory appeal that the trial court improperly ordered binding arbitration in the matter. Essentially, appellees argue that because appellants could have raised the issue of whether the trial court properly ordered Rickie to submit her claims against appellees to binding arbitration, then appellants should be deemed to have waived that issue, because appellants should not be permitted "to come back to the Court with a new angle on an old issue." We find this argument unpersuasive.
 {¶ 32} Initially, we note that appellees appear to be conflating two, distinct legal concepts, to wit: the law-of-the-case doctrine and the doctrine of waiver. "The law-of-the-case doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." Porter v.Litigation Mgt., Inc., 146 Ohio App.3d 558, 561 2001-Ohio-4298. "The doctrine is generally considered a rule of practice rather than a binding rule of substantive law and will not be applied so as to achieve unjust results." Id. "However, the rule is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of courts as designed by the Ohio Constitution." Id. "[T]he doctrine functions to compel trial courts to follow the mandates of reviewing courts." Id. "Thus, where at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law." Id.
 {¶ 33} The doctrine of waiver, on the other hand, provides that generally, an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. McKimm v. Ohio Elections Comm.,89 Ohio St.3d 139, 149, 2000-Ohio-118, fn. 3.
 {¶ 34} In this case, neither the law-of-the-case doctrine nor the doctrine of waiver should have prevented either the trial court or this court from recognizing the trial court's failure to enforce the express terms of the parties' arbitration agreement. The waiver doctrine does not apply because appellants did call the error of which they now complain to the trial court's attention at a time when the trial court could have corrected it.
 {¶ 35} The law-of-the-case doctrine obligated the trial court to follow this court's pronouncements on the legal issues that were raised in appellants' interlocutory appeal. Porter,146 Ohio App.3d at 561. However, in our decision in that interlocutory appeal, this court never ruled on the propriety of the trial court's decision to send this matter to binding
arbitration. See McGuffey, 141 Ohio App.3d 49-54. Appellees, without citing any authority in support, argue that because appellants could have raised that issue on interlocutory appeal, they were obligated to do so.
 {¶ 36} While it might be argued that appellants should have raised, in their interlocutory appeal, their claim that the trial court erroneously ordered Rickie to submit her claims against appellees to binding arbitration, it needs to be pointed out that the trial court's order referring Rickie's case against appellees to arbitration did not expressly state that the trial court was taking the extraordinary step of removing the provision in the parties' arbitration agreement allowing employees like Rickie to refuse to accept the arbitrator's decision and to file an action in court.
 {¶ 37} In fact, it is apparent from the trial court's decision that the trial court did not intentionally remove or redact that provision from the parties' arbitration agreement. Instead, it appears that the trial court's failure to enforce that provision was a matter of oversight on its part.
 {¶ 38} Furthermore, it needs to be emphasized that the trial court's order referring the matter to binding arbitration was not a final judgment. The trial court was permitted to reconsider its interlocutory orders up until the time it entered final judgment. See Chitwood v. Zurich Am. Ins. Co., Franklin App. No. 04AP-173, 2004-Ohio-6718 (while a trial court is not free to sua sponte modify its final judgment, it may modify any of its interlocutory orders entered pending issuance of a final judgment). Here, the trial court erred in ordering Rickie to submit to binding arbitration. The trial court should not have ordered Rickie to binding arbitration when appellants called the error to the trial court's attention at a time when it could have corrected it. The trial court's failure to do so constituted reversible error.
 {¶ 39} Appellants' assignment of error is sustained.
 {¶ 40} The judgment of the trial court is reversed and this cause is remanded to the trial court for further proceedings consistent with this opinion and in accordance with the law of this state.
Powell, P.J., and Bressler, J., concur.