JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, Michael Melia, appeals the judgment of the trial court granting the motion of defendants-appellees, OfficeMax North America, Inc. and OfficeMax, Inc. (collectively "OfficeMax"), to stay the case pending arbitration. For the reasons that follow, we affirm.
 {¶ 2} Melia initiated this action in April 2005, asserting claims for breach of contract, promissory estoppel, wrongful discharge, retaliation and spoliation.[1] OfficeMax filed a motion to dismiss or to stay proceedings pending arbitration, wherein it argued that all of Melia's claims were subject to arbitration. A hearing was held on OfficeMax's motion, and the court heard oral arguments by the parties. The court inquired of Melia's counsel as to what further evidence he intended to present to the court. The court determined that Melia did not have any evidence other than that which was already before the court and determined that an evidentiary hearing was not necessary. The court allowed the parties additional time to file supplemental briefs, and allowed Melia additional time to obtain a handwriting expert. Both parties filed supplemental briefs; Melia did not obtain an expert.
 {¶ 3} The trial court subsequently stayed the case so that it could "be arbitrated in accordance with the arbitration agreement." Melia now appeals.
 {¶ 4} In his three assignments of error, Melia contends that the trial court erred in staying the case because: 1) the arbitration provision of the Covenant he signed was too ambiguous to be enforceable; 2) he should have been allowed an
 {¶ 5} In support of its motion to dismiss or stay proceedings, OfficeMax submitted a document, signed by Melia, titled "Fair Competition Covenant." Paragraph ten of the 11-paragraph, four-page Covenant provides as follows:
 {¶ 6} "10. Arbitration. The validity, interpretation, construction and performance of this Agreement is to be construed in accordance with the laws of the State of Ohio without regard to its conflicts of law principles. Any dispute, claim or controversy between the Company and me related to this Agreement or which arises out of the recruitment, employment, cessation of employment or any claim or unlawful discrimination or harassment that might or did arise during or as a result of my employment shall be resolved solely through arbitration as provided in Appendix A attached to this Agreement and incorporated herein and made a part hereof by reference." (Emphasis in original.)
 {¶ 7} The concluding statement of the Covenant reads as follows:
"I have carefully considered the nature and extent of the restrictions on me and the rights and remedies conferred on the Company under this Covenant, and hereby acknowledge and agree that the same are reasonable in both time and territory, are designed to protect the Company from unfair competition, are no greater than what is needed to protect the Company from such unfair competition, do not stifle my inherent skill and experience, would not operate as a bar to my sole means of support, would not place an undue hardship on me, are fully required to protect the legitimate interest of the Company and do not confer a benefit upon the Company which is disproportionate to the detriment to me." (Emphasis in original.)
 {¶ 8} Melia contends that Appendix A, titled "Arbitration Agreement," referenced in the Covenant was not presented to him when he signed the Covenant and only later fraudulently produced by OfficeMax. The Arbitration Agreement provides in pertinent part that:
 {¶ 9} "I agree to arbitrate any dispute, claim, or controversy ("Claim") against OfficeMax, Inc., * * * arising out of my recruitment, my employment, the cessation of my employment, or any Claim of unlawful discrimination or harassment that might or did arise during or as a result of my employment that could have been brought before an appropriate government administrative agency or in an appropriate government administrative agency or in an appropriate court including, but not limited to, all contract, tort, common law and statutory Claims of any sort, whether based on state or federal law, including Claims under Title VII of the Civil Rights Act of 1964, as amended,42 U.S.C. § 2000e, the Americans with Disabilities Act of 1990,42 U.S.C. § 12102, the Age Discrimination in Employment Act, 29 U.S.C. § 621, Ohio Revised Code Chapter 4112, Ohio Revised Code § 4113.52, the Equal Pay Act, 29 U.S.C. § 206, and any state or local law of a similar nature to any of the foregoing, but excluding workers' compensation and unemployment compensation claims. Conversely, OfficeMax agrees to arbitrate any Claim covered by the provisions of this Appendix."
 {¶ 10} Initially, we address the standard of review for the granting or denial of a motion to stay proceedings pending arbitration. Melia contends that we review de novo, while OfficeMax contends we review for an abuse of discretion. We note that this court is in disagreement as to which standard of review applies to a trial court's ruling on a motion to stay proceedings pending arbitration. See Shumaker v. Saks Inc.,163 Ohio App.3d 173, 2005-Ohio-4391, 837 N.E.2d 393, citing Vanyo v. ClearChannel Worldwide, 156 Ohio App.3d 706, 2004-Ohio-1793,808 N.E.2d 482; Ghanem v. Am. Greeting Corp., Cuyahoga App. No. 82316, 2003-Ohio-5935; Herman v. Ganley Chevrolet, Inc.,
Cuyahoga App. Nos. 81143 81272, 2002-Ohio-7251; Spalsbury v.Hunter Realty, Inc. (Nov. 30, 2000), Cuyahoga App. No. 76874;Gibbons-Grable Co. v. Gilbane Bldg. Co. (1986),34 Ohio App.3d 170, 517 N.E.2d 559 (holding that the question of whether a party has agreed to submit an issue to arbitration is a question of law requiring de novo review). Cf. Bevan v. Owens-Illinois, Inc.,
Cuyahoga App. No. 84776, 2005-Ohio-2323; Strasser v. Fortney Weygandt, Inc., Cuyahoga App. No. 79621; Sikes v. GanleyPontiac Honda (Sept. 13, 2001), Cuyahoga App. No. 79015 (holding that the appropriate standard of review is abuse of discretion).
 {¶ 11} In this case, under either standard, we find that the trial court did not err in granting OfficeMax's motion.
 {¶ 12} Melia argues that the arbitration provision of the Covenant was too ambiguous to be enforced. Specifically, Melia contends that the Covenant, by its very terms, related solely to non-competition issues and, moreover, that he was informed by OfficeMax's attorney "when he gave him the Agreement and demanded his signature that the Agreement only concerned non-competition matters." Melia further argues that the Covenant did not describe the rights, including the right to a trial, that he would be waiving, nor did it describe the arbitration process to be followed.
 {¶ 13} R.C. 2711.01(A) provides:
 {¶ 14} "(A) A provision in any written contract, except as provided in division (B) of this section, to settle by arbitration a controversy that subsequently arises out of the contract, or out of the refusal to perform the whole or any part of the contract, or any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, or arising after the agreement to submit, from a relationship then existing between them or that they simultaneously create, shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract."
 {¶ 15} An arbitration clause in a contract should not be denied effect unless it may be said with positive assurance that the clause is not susceptible of an interpretation that covers the asserted dispute. Gibbons-Grable Co., supra at 173. A party cannot be compelled to arbitrate a dispute that it has not agreed to arbitrate. Piqua v. Ohio Farmers Ins. Co. (1992),84 Ohio App.3d 619, 621, 617 N.E.2d 780. Nonetheless, any dispute regarding whether an issue is within an arbitration term should be resolved in favor of coverage. Gibbons-Grable, supra at 173. "In examining an arbitration clause, a court must bear in mind the strong presumption in favor of arbitrability and resolve all doubts in favor of arbitrability." Neubrander v. Dean WitterReynolds, Inc. (1992), 81 Ohio App.3d 308, 311, 610 N.E.2d 1089. Ohio and federal courts encourage arbitration to settle disputes.ABM Farms, Inc. v. Woods, 81 Ohio St.3d 498, 500, 1998-Ohio-612, 692 N.E.2d 574.
 {¶ 16} In its App.R. 9(C) statement of proceedings, the trial court stated the following:
 {¶ 17} "This Court based its decision on the fact that [Melia] signed a Fair Competition Covenant which stated that all employment related claims would be submitted to arbitration `as provided in Appendix A attached to this Agreement and incorporated herein and made a part hereof by reference.' Therefore, [Melia] entered into a binding agreement and pursuant to that contract any employment related disputes would be arbitrated. [Melia] is bound to those terms solely by signing the Fair Competition Covenant. The terms the Agreement are clear and unambiguous and this Court hereby enforced them, as well as gave [Melia] a full and fair opportunity to present his claims to this Court." (Emphasis added.)
 {¶ 18} Upon review of the arbitration provision contained in the Covenant, we agree with the trial court that its terms are clear and unambiguous. The provision is boldly labeled "Arbitration" and its terms specifically reference discrimination and harassment as examples of claims that are to be resolved "solely through arbitration." With such clear and unambiguous language, we are not persuaded by Melia's argument that the Covenant related only to non-competition issues.
 {¶ 19} We now consider Melia's argument that the Covenant is unenforceable because the appendix allegedly was not attached. This issue was addressed by this court in a similar case. InEstate of Brewer v. Dowell Jones, Cuyahoga App. No. 80563, 2002-Ohio-3440, the plaintiff investors signed "New Account Applications" when they opened their accounts with the defendant financial institution. The New Account Applications incorporated, in bold-type print, a "Customer Agreement" which provided that all controversies were to be settled by arbitration. The plaintiffs filed a complaint in the court of common pleas against the defendants for negligent supervision of their accounts, and defendant filed a motion for stay and to compel arbitration. The plaintiffs opposed the motion, arguing that they did not receive or review the Customer Agreement and, thus, did not know that all controversies had to be arbitrated.
 {¶ 20} In finding that the parties agreed to arbitration, this court noted the following:
 {¶ 21} "* * * [P]hysical delivery of a contract is not essential to create a legally enforceable agreement. IndustrialHeat Treating Co. v. [Toledo Stamping and Mfg. Co.] (1995),104 Ohio App.3d 499, 662 N.E.2d 837. Where the parties intend to be bound by the contract, it is valid, even where a party later claims that he never received a copy of the agreement." Id. at ¶ 11.
 {¶ 22} Melia does not dispute that he signed the Covenant, which provided for arbitration and referenced Appendix A, setting forth the terms of the arbitration process. Accordingly, we agree with the trial court that the Covenant alone is sufficient to render the Arbitration Agreement enforceable. Moreover, it is irrelevant whether OfficeMax explained the Agreement to Melia. As this court stated in Brewer, "[a] party entering a contract has a responsibility to learn the terms of the contract prior to agreeing to its terms. The law does not require that each aspect of a contract be explained orally to a party prior to signing." Id. at ¶ 13, citing ABM Farms, Inc., supra. "`It will not do for a man to enter into a contract, and when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written.'" Brewer at ¶ 13, quoting ABM Farms, Inc.,
supra, citing Upton v. Tribilcock (1875), 91 U.S. 45, 50.
 {¶ 23} Further, even where there is misrepresentation by one party of the contents of an agreement, the agreement is not void for fraud in the factum when the signer had an opportunity to read and understand the documents before execution. Haller v.Borror Corp. (1990), 50 Ohio St.3d 10, 14, 552 N.E.2d 207, 210. We therefore find no merit to Melia's argument that OfficeMax's general counsel, Ross Pollock, informed him that the Covenant related only to non-competition issues.
 {¶ 24} We also find that the Covenant was not an unconscionable adhesion contract. Unconscionability is generally recognized as the absence of meaningful choice on the part of one of the parties to a contract, combined with contract terms that are unreasonably favorable to the other party. Collins v. ClickCamera Video (1993), 86 Ohio App.3d 826, 834, 621 N.E.2d 1294. In order for a contract provision to be unconscionable, there must exist a "certain quantum" of both "substantive" and "procedural" unconscionability. Id. Substantive unconscionability exists when the contract terms are determined to be commercially unfair and unreasonable. Cross v. Carnes (1998),132 Ohio App.3d 157, 169-170, 724 N.E.2d 828, 837.
 {¶ 25} Procedural unconscionability, on the other hand, exists when it is determined that there was no voluntary meeting of the minds by the parties to the contract under circumstances particular to that contract. Id. at 170. Likewise, a contract is adhesive if it is a standardized contract form offered on essentially a take-it-or-leave-it basis, without affording a consumer a realistic opportunity to bargain, and under such conditions that the consumer cannot obtain the desired product or services except by acquiescing in the form contract. Williams v.Aetna Fin. Co., 83 Ohio St.3d 464, 482, 1998-Ohio-294,700 N.E.2d 859, 872-873.
 {¶ 26} In order to raise the issue of the possible unconscionability or adhesive nature of a contract, a plaintiff must show that: 1) the contract terms are one-sided or unreasonably favorable to the other party; 2) that disparity between the parties' bargaining power denies the less advantaged party meaningful choice in accepting the terms of the contract; and 3) that the less advantaged party cannot obtain the desired product or services except by acquiescing in the form contract.Genaw v. Lieb, Montgomery App. No. 20593, 2005-Ohio-807, citingHaga v. Martin Homes, Inc. (Aug. 4, 2000), Tuscarawas App. No. 2000AP020018.
 {¶ 27} In many cases, the meaningfulness of the choice is negated by a gross inequity of bargaining power. Orlett v.Suburban Propane (1989), 54 Ohio App.3d 127, 129,561 N.E.2d 1066, 1069. However, mere inequality of bargaining power is insufficient to invalidate an otherwise enforceable arbitration agreement. Gilmer v. Interstate/Johnson Lane Corp. (1991),500 U.S. 20, 33, 111 S. Ct. 1647, 114 L. Ed. 2d 26; Neubrander,
supra at 311. In the employment context, this court has held that when a candidate for employment is free to look elsewhere for employment, and is not otherwise forced to consent to the arbitration agreement, the agreement to arbitrate is not unconscionable. Butcher v. Bally Total Fitness Corp., Cuyahoga App. No. 81593, 2003-Ohio-1734, at ¶ 39, citing EEOC v. Frank'sNursery Crafts (E.D. Mich. 1997), 966 F. Supp. 500.
 {¶ 28} Melia was hired by OfficeMax as its Vice President of Commercial Sales. In executing the Covenant, Melia was not in a position of a gross inequity of bargaining power. Further, the Covenant was not one-sided or unreasonably favorable to one party; both Melia and OfficeMax were required to arbitrate claims against the other. Moreover, Melia has failed to demonstrate that he could not find employment elsewhere if he refused to sign the Covenant. We therefore find Melia's claim that the Covenant was an unconscionable adhesion contract to be without merit.
 {¶ 29} Additionally, notwithstanding the fact that the Arbitration Agreement was enforceable regardless of whether it was attached to the Covenant, we are not persuaded by Melia's argument that OfficeMax committed fraud or spoliation. Melia's contention is based on the two affidavits submitted by Lisa Jobe, OfficeMax's senior staff attorney. In particular, in support of its original motion to dismiss or stay pending arbitration (in the first case voluntarily dismissed by Melia), OfficeMax submitted Jobe's affidavit, wherein she attached and authenticated what she averred to be a true and accurate copy of the Covenant and Appendix A kept in the ordinary course of business in Melia's personnel file.
 {¶ 30} When Melia refiled his lawsuit, OfficeMax refiled its original motion to dismiss or stay, with Jobe's original affidavit. OfficeMax, however, subsequently requested leave to correct an error with its motion. In a subsequent affidavit submitted in support of OfficeMax's motion to correct, Jobe averred that at the time her original affidavit was prepared, she possessed copies of several documents signed by Melia, including the Covenant, but not the referenced Appendix A. Both Jobe and OfficeMax's general counsel, Pollock, averred that the original Covenant, with the attached Appendix, was in Melia's executive file, which was maintained by Pollock.
 {¶ 31} Jobe averred that in preparing her original affidavit, she confirmed with Pollock, who had been present when Melia signed the Covenant, that OfficeMax's standard Arbitration Agreement was attached to the Covenant Melia signed. Jobe averred that after learning the standard Agreement had been attached to Melia's Covenant, she obtained an electronic version of the standard Agreement and attached that to her original affidavit in support of the motion to dismiss or stay. Jobe averred that she believed that the Agreement she originally attached was a true and accurate copy of the Agreement Pollock advised her was attached to the Covenant when Melia signed it. The Agreement originally submitted by Jobe and the substituted Agreement are substantively the same Agreement; they differ only in format.
 {¶ 32} Melia maintains that, because Jobe did not attach a copy of the actual Agreement OfficeMax contends was attached to the Covenant which he signed, it demonstrates that the Agreement was indeed not attached and that OfficeMax committed fraud and spoliation in later attaching it. The trial court considered Melia's argument and was not persuaded. We do not find that the trial court erred in this regard and thus find Melia's arguments relative to fraud and spoliation to be without merit.
 {¶ 33} We are also not persuaded by Melia's arguments that the Arbitration Agreement is vague and ambiguous and does not explain the process. Upon review of the two-page Agreement, we find that it sets forth the arbitration process in detail and is not vague and ambiguous. It states that Melia would not be able to bring any claims in court, and that he agreed to arbitrate claims arising under Title VII and Revised Code Chapter 4112, and it sets forth the arbitration procedure and refers him to the American Arbitration Association ("AAA") to obtain a copy of the governing rules.
 {¶ 34} We are similarly not persuaded by Melia's argument that the Agreement is unenforceable because it does not mention waiver of the right to a jury trial. We agree with the Second Appellate District, which addressed this issue as follows:
 {¶ 35} "* * * [A] contracting party is presumed to know the reasonable import of the contents of a signed agreement, including the existence and scope of an arbitration clause. "As to the failure of the arbitration clause to include a jury waiver provision, `the loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate.'" [Burden v. Check Into Cash of Kentucky, LLC (C.A.6, 2001),267 F.3d 483, 492, citing Sydnor v. Conseco Fin. Servs. Corp.
(C.A.4, 2001), 252 F.3d 302, 307.] A party who agrees to arbitration is bound even if the clause does not reference or contain an express waiver of the right to a jury trial." Garciav. Wayne Homes, LLC, Clark App. No. 2001 CA 53, 2002-Ohio-1884. (Some internal citations omitted.) We therefore find Melia's argument that the failure of the Agreement to mention waiver of a jury trial renders it unenforceable to be without merit.
 {¶ 36} Melia also argues that the Agreement is unenforceable because the AAA rules can be modified. Initially, we note that it is commonplace for arbitration agreements to incorporate the AAA rules. The mere fact that an agreement incorporates the rules does not make it invalid. Rather, the complaining party must be able to specifically cite to, and demonstrate how, a specific provision in the AAA rules renders the Agreement invalid. See, e.g., Cooper v. MRM Invest. Co. (C.A.6, 2004), 367 F.3d 493
(requiring the employee to demonstrate that the costs provision in the AAA rules was so prohibitive as to render the agreement unenforceable).
 {¶ 37} Here, Melia has not cited any specific rule (or amendment thereto) that purportedly so adversely affects him so as to render the Agreement unenforceable. We therefore find Melia's contention that the incorporation of the AAA rules invalidates the Agreement to be without merit.
 {¶ 38} Melia also argues that the trial court erred by not permitting him to conduct discovery. This court, however, ruled in Sasaki v. McKinnon (1997), 124 Ohio App.3d 613,707 N.E.2d 9, that R.C. 2711.02, governing stay of proceedings pending arbitration, does not require discovery but, rather, only mandates that the court be satisfied that the dispute is governed by the arbitration provision. The trial court, as previously mentioned, specifically found that Melia "entered into a binding agreement and pursuant to that contract any employment related disputes would be arbitrated." The trial court therefore did not err by not permitting Melia to conduct discovery.
 {¶ 39} Melia finally argues that the trial court erred by not holding an evidentiary hearing. In Maestle v. Best Buy Co.,100 Ohio St.3d 330, 2003-Ohio-6465, 800 N.E.2d 7, the Supreme Court of Ohio held that "a trial court considering whether to grant a motion to stay proceedings pending arbitration filed under R.C.2711.02 need not hold a hearing pursuant to R.C. 2711.03 when the motion is not based on R.C. 2711.03." Id. at 334. Here, OfficeMax's motion was pursuant to R.C. 2711.02, not R.C.2711.03. Moreover, the court held a hearing at which the parties presented oral arguments. The court inquired of Melia's counsel as to what further evidence he intended to present that was not already before the court; the court determined that counsel had none. Melia has not offered to this court, either, what additional evidence he intended to present. Thus, the trial court did not err by not holding an evidentiary hearing.
 {¶ 40} Accordingly, Melia's three assignments of error are without merit and the judgment of the trial court is affirmed.
It is ordered that appellees recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
McMonagle, Judge Dyke, A.J., and Cooney, J., Concur.
[1] The case had previously been filed and voluntarily dismissed by Melia. evidentiary hearing to present evidence of fraud relative to the Arbitration Agreement; and 3) there was no enforceable Arbitration Agreement.