JOURNAL ENTRY AND OPINION
{¶ 1} Thomas Bevan ("Bevan") appeals the decision of the trial court binding him to a settlement agreement and ordering him to arbitrate his dispute under the terms of the settlement agreement. Bevan argues that the trial court erred in binding him to the settlement agreement, erred in failing to find that Owens-Illinois waived their right to arbitrate, and erred in failing to find that the settlement agreement is against public policy. For the following reasons we affirm.
 {¶ 2} On April 23, 1993, the law firm of Bevan and Economus entered into a settlement agreement ("agreement") with Owens-Illinois ("O-I"). Attorney Robert Bunda ("Bunda") represented O-I, and attorney Dale Economus represented Bevan Economus. The senior attorney for O-I signed the agreement and Dale Economus signed the agreement for Bevan 
Economus. Bevan did not sign the agreement but attended the negotiations.
 {¶ 3} The agreement settled 260 tire worker asbestos cases and also provided a vehicle for administratively handling future asbestos claims outside of the tort litigation system. The agreement provided that Bevan Economus would not sue O-I, but would submit evidence of a claim. The agreement stipulated the medical criteria, exposure criteria, and settlement values. If a claimant met the medical and exposure criteria, O-I would automatically process and pay the claim.
 {¶ 4} The agreement applied to the claimants represented by Dale Economus and the law firm of Bevan and Economus. The agreement refers to Bevan Economus simply as Economus. Section 1.a. provides in pertinent part:
"Claimants/plaintiffs represented by Economus. The terms claimant orplaintiff shall include all plaintiffs listed on Exhibit A attachedhereto; all claimants, including tireworkers, who have retained Economusprior to April 1, 1993 who are not listed on Exhibit A; and shall alsoinclude all future claimants who retain Economus, or any counsel now orin the future affiliated with Economus * * *."
 {¶ 5} Section 9.(c) provides for arbitration of disputes regarding
 {¶ 6} interpretation of the agreement, and states in pertinent part:
"In cases of disputes over the interpretation of this agreement, apanel of three arbitrators shall be chosen according to the rules of theAmerican Arbitration Association * * *."
 {¶ 7} On June 3, 1993, Dale Economus transmitted the signed agreement to O-I on behalf of Bevan Economus. The transmittal letter contained the names Dale Economus and Tom Bevan along with the names of several other attorneys. However, underneath the firm name was the phrase "An Association of Independent Attorneys at Law." Bevan maintains that he has never been an employee of Bevan Economus nor has he ever been an employee of partners Keith Bevan (Tom Bevan's father), or Dale Economus. Bevan states that his involvement with Bevan Economus was limited to assisting with cases as a self-employed attorney, that he merely shared office space with Bevan Economus, and that he did not have any power to approve or enter into any settlement agreements.
 {¶ 8} However, O-I attorney Bunda maintains that from the time he signed the agreement until the instant dispute arose, he understood Tom Bevan to be the "Bevan" in Bevan Economus. Furthermore, Bunda stated that he had never met Keith Bevan and that all the negotiations for the settlement agreement were with Tom Bevan and Dale Economus.
 {¶ 9} On December 1, 1995, the law firm of Bevan Associates formally incorporated under the laws of the State of Ohio. The new firm maintained the same address as the law firm of Bevan Economus. Tom Bevan was, and continues to be, a principal and employee of Bevan 
Associates. Dale Economus has never been an employee of the firm Bevan Associates.
 {¶ 10} In 1997, Bevan filed approximately 98 lawsuits against O-I. In response, Bunda, on behalf of O-I, sent a letter to Bevan confirming a phone conversation in which Bevan agreed that the recently filed lawsuits would be processed under the agreement:
"You confirmed my belief that you named Owens-Illinois as a defendantin your most recently filed lawsuits because of the rush created by thenew Ohio Tort Reform Statutes. You also confirmed that the filing ofthese suits was not an indication you were abrogating our 1993 ClaimsAgreement, and your office fully intends to comply with the terms of thatagreement. Therefore, with these assurances from you and as I suggestedin my letter to Dale, Owens-Illinois, Inc. will treat all of thecomplaints which were recently filed by your office as notificationsunder the 1993 Claims Agreement."
 {¶ 11} In a September 15, 1998 letter from O-I counsel to Bevan, Bevan agreed that the case of Walter Anderson would be processed under the 1993 agreement:
"I just want to confirm our telephone conversation today during whichyou agreed that this case would proceed under the terms of our settlementagreement. Therefore, Owens-Illinois, Inc. does not have to file ananswer or appearance."
 {¶ 12} Additionally, in a June 25, 1998 letter from Bunda to Bevanconcerning the Walter Park case, O-I counsel articulated anintent that the case would be processed under the 1993 agreement, and Bevan did not express any disagreement:
"I believe we should treat this case as a claim and process it underthe terms of our settlement agreement. Therefore, Owens-Illinois, Inc.will not be participating in any discovery or other defensearrangements. Please let me know if you disagree with my position."
 {¶ 13} In the fall of 2000, Bevan orally expressed dissatisfaction with the terms of the agreement. He argued that he was not legally bound to the terms of the agreement because he did not sign the document. Furthermore, Bevan argued that he negotiated and settled approximately 1,000 cases in conjunction with the law firm of Kelley Ferraro outside of the parameters of the 1993 agreement.
 {¶ 14} In response, O-I contends that it entered into a separate settlement agreement with Kelley Ferraro in September 2000 that was similar to the agreement executed between O-I and Bevan Economus. During settlement negotiations, O-I suspected that some of the cases involved were actually those in which Bevan was the attorney of record. Bevan later confirmed that the cases were jointly owned by Bevan and Kelley Ferraro. O-I honored its commitment to Kelley Ferraro and processed all cases within the parameters of their negotiated settlement agreement. O-I further argues that had it known of Bevan's involvement with the cases, it would have demanded that said cases be processed under the 1993 agreement.
 {¶ 15} Between late 2000 and 2002, Bevan and O-I held discussions in an effort to amicably resolve their dispute. During that time, Bevan and Bunda resolved several cases for amounts greater than the amounts contained in the settlement agreement, but otherwise complied with the terms of the agreement. The parties were unable to achieve a resolution but O-I expressed a desire to continue to settle asbestos cases with Bevan Associates under the terms of the 1993 settlement agreement. On October 22, 2003, O-I filed a claim for arbitration with the American Arbitration Association.
 {¶ 16} In response, Bevan filed a motion for a temporary restraining order ("TRO"), a complaint for TRO, and an injunction to prevent the arbitration from going forward. On March 11, 2004, the court denied the TRO and ordered the parties to submit briefs on the issue of whether the court had jurisdiction to decide whether Bevan was a party to and thus bound by the 1993 agreement between O-I and Bevan Economus. O-I filed a motion to compel arbitration on March 25, 2004. On May 3, 2004, the court issued an order finding that Bevan was bound by the agreement and ordered the parties to arbitrate the dispute under the terms of the settlement agreement, thereby granting O-I's motion to compel. Bevan appeals raising the three assignments of error contained in the appendix to this opinion.
 {¶ 17} As a preliminary matter, this court must address the format used by the parties. Both parties have failed to provide either a statement of the assignments of error or a statement of the issues presented in violation of App.R. 16. Nonetheless, this court shall address the merits of this opinion and treat the parties' propositions of law as assignments of error.[1]
 {¶ 18} In his first assignment of error, Bevan argues that the trial court erred in binding him to the agreement when he did not sign the agreement, when Bevan Economus did not employ him, and when the agreement did not mention him. This assignment lacks merit.
 {¶ 19} In determining whether the trial court properly denied or granted a motion to stay proceedings and compel arbitration, the standard of review is whether the order constituted an abuse of discretion.Strasser v. Fortney Weygandt, Inc. (Dec. 20, 2001), Cuyahoga App. No. 79621. See, also, Reynolds v. Lapos Constr., Inc. (May 30, 2001), Lorain App. No. 01CA007780; Harsco Corp. v. Crane Carrier Co. (1997),122 Ohio App.3d 406, 410. "The term `abuse of discretion' connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. (Citations omitted.)
 {¶ 20} Ohio and federal courts encourage arbitration to settle disputes. ABM Farms v. Woods, 81 Ohio St.3d 498, 1998-Ohio-612. R.C.2711.03 provides as follows:
"The party aggrieved by the alleged failure of another to perform undera written agreement for arbitration may petition any court of commonpleas having jurisdiction of the party so failing to perform for an orderdirecting that such arbitration proceed in the manner provided for in thewritten agreement."
 "The court shall hear the parties, and upon being satisfied that themaking of the agreement for arbitration or the failure to complytherewith is not in issue, the court shall make an order directing theparties to proceed to arbitration in accordance with the agreement. If themaking of the arbitration agreement or the failure to perform it is inissue, the court shall proceed summarily to the trial thereof." ABM Farmsv. Woods, 81 Ohio St.3d at 501.
 {¶ 21} To determine whether this dispute should be arbitrated, the trial court was required to first determined whether there was a valid agreement to arbitrate between the parties. "R.C. Chapter 2711 mirrors the federal jurisprudence in its acknowledgment of the severability of the arbitration clause from the remainder of the contract. R.C. 2711.03
clearly provides that only when the making of the arbitration clause is itself at issue may the court proceed to try the action." ABA Farms,81 Ohio St.3d at 501. The Federal Arbitration Act and the Ohio Arbitration Statute provide that the court must refer to arbitration, those disputes in which "the making of the agreement for arbitration or the failure to comply therewith is not in issue." Section 4, Title 9, U.S. Code; R.C. 2711.03.
 {¶ 22} Here, the trial court found that Bevan Economus and O-I entered into a valid settlement agreement containing a valid arbitration clause. The trial court further found that although Bevan did not sign the agreement, he was nonetheless bound by the express terms of the contract. The trial court based its conclusions on the following: the express language of the agreement encompassing any counsel now or in the future affiliated with Economus; that Dale Economus signed the agreement as an agent of Bevan Economus; that Bevan worked as an associate of the law firm at the time of the execution of the agreement; and, the correspondence between Bevan and O-I indicating not only that the agreement was not abrogated, but an intent to comply with the agreement.
 {¶ 23} The trial court did not find persuasive Bevan's argument that he was a self-employed, independent contractor at the time of the execution of the agreement because Bevan negotiated settlements under the agreement with O-I and he therefore benefitted from the agreement.
 {¶ 24} In looking at the above analysis used by the trial court, we cannot find, as a matter of law, that the trial court abused its discretion in granting O-I's motion to compel arbitration. The trial court properly weighed the evidence, heard arguments on the evidence, applied the applicable law, and concluded that Tom Bevan was a party to, and thus bound by, the 1993 settlement agreement and further ordered the parties to arbitrate their dispute under the terms of the settlement agreement. We cannot say that this decision was "unreasonable, arbitrary or unconscionable." Blakemore at 219.
 {¶ 25} In his second and third assignments of error, Bevan argues that the trial court erred in failing to find that O-I waived their right to arbitrate and erred in failing to find that the settlement agreement is against public policy. This Court's determination of the first assignment of error renders the second and third assignments of error moot.
 {¶ 26} The questions of whether O-I waived their right to arbitrate or whether the arbitration agreement is against public policy are procedural questions. "Once it is determined * * * that the parties are obligated to submit the subject matter of this dispute to arbitration, `procedural' questions which grow out of the dispute and bear on its final disposition would be left to the arbitrator." John Wiley Sons, Inc. v. Livingston
(1964), 376 U.S. 543, 557.
 {¶ 27} Accordingly, the decision of the trial court binding Tom Bevan to the 1993 settlement agreement and ordering the parties to arbitrate their dispute under the terms of the agreement is affirmed.
Appendix A:
 Assignments of Error
 I. The trial court erred in finding Plaintiff-Appellant was bound bythe 1993 Agreement where Plaintiff-Appellant was not a signatory to thecontract, an employee of Bevan Economus, or even mentioned in the 1993Agreement.
 II. The Trial Court erred in failing to find that even ifPlaintiff-Appellant was a party to the 1993 Agreement, Defendant-Appelleewaived their right to arbitrate by settling cases outside of the 1993Agreement with Plaintiff-Appellant's clients.
 III. The Trial Court erred in finding Plaintiff-Appellant to be boundby the 1993 Agreement, because the 1993 Agreement is against publicpolicy and it is unethical for an attorney to enter into an agreement tosettle cases on behalf of future clients, and therefore the 1993Agreement is void as to all future clients.
It is ordered that appellee shall recover of appellant costs herein taxed.
The court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze Jr., P.J., And Corrigan, J., Concur
[1] Propositions of law pertain to memoranda in support of jurisdiction filed before the Supreme Court of Ohio. Please reference the Ohio Supreme Court rules of practice.