**SHUMAKER, Admr., Appellee,**

v.

**SAKS, INC. et al., Appellants.**

[Cite as *Shumaker v. Saks, Inc.*, 163 Ohio App.3d 173, 2005-Ohio-4391.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 86098.

Decided Aug. 25, 2005.

McDonald Hopkins Co., L.P.A., Lucy K. O'Shaughnessy, and Kent C. Kiffner, for appellee.

Jones Day, Tracy K. Stratford, MaryAnn B. Gall, and Pearson N. Bownas, Cleveland, for appellants.

CHRISTINE T. McMONAGLE, Judge.

{¶ 1} Plaintiff-appellee, Roger L. Shumaker, as administrator of the estate of Delma Caputo, filed suit against defendants-appellants, Saks, Inc., d.b.a. Saks Fifth Avenue and Saks Fifth Avenue, Inc., and Shirley Novak, alleging that appellants had violated Ohio's Consumer Sales Practices Act.

{¶ 2} In his complaint, Shumaker alleged that beginning in 1998 and continuing through December 2003, Novak visited Caputo as a personal shopper to sell her goods and services from Saks. The meetings typically occurred once a month and would invariably result in Caputo purchasing numerous items and products from Novak.  During that time, Caputo lived alone, was entirely housebound, and

desired companionship in her home. Novak, with knowledge that Caputo was lonely, continued to pursue her as a customer, despite the obvious fact that she did not need or use the items she purchased and could not afford them.

{¶ 3} When Caputo's family and financial advisors became aware of Caputo's excessive purchases of items from Novak, Shumaker, in his capacity as Caputo's attorney, called Novak's supervisor and requested that Novak stop visiting Caputo and selling goods to her. During this conversation, Shumaker also advised Novak's supervisor that appellants' continued conduct would jeopardize Caputo's financial condition. Despite Shumaker's request, Novak continued to visit Caputo and sell her items from Saks. At Caputo's death, Caputo's family found over $100,000 worth of items from Saks in her home. The items had never been used and still bore Saks tags, and some were still in their original packaging.

{¶ 4} Appellants answered the complaint and then filed a motion to stay proceedings and compel arbitration, arguing that Caputo's credit agreement with Saks governed the dispute and contained an arbitration clause that required arbitration. The trial court denied appellants' motion, ruling that "plaintiff's claims are unrelated to the credit card agreement containing the arbitration clause." This appeal followed.[1]

{¶ 5} In their single assignment of error, appellants argue that the trial court erred in denying their motion to stay proceedings and compel arbitration.

{¶ 6} The judges of this court do not agree upon the standard of review applicable to a trial court's decision denying a stay of proceedings and referral to arbitration. Several panels have held that whether the parties have agreed to arbitrate is a question of law requiring de novo review, while others have held that the appropriate standard is whether the trial court abused its discretion in rendering its decision. See, e.g., *Vanyo v. Clear Channel Worldwide* (2004), 156 Ohio App.3d 706, 808 N.E.2d 482; *Ghanem v. Am. Greetings Corp.*, Cuyahoga App. No. 82316, 2003-Ohio-5935, 2003 WL 22510663; *Herman v. Ganley Chevrolet, Inc.* (Dec. 26, 2002), Cuyahoga App. Nos. 81143 and 81272, 2002 WL 31875969; *Spalsbury v. Hunter Realty, Inc.* (Nov. 30, 2000), Cuyahoga App. No. 76874, 2000 WL 1753436; *Gibbons–Grable Co. v. Gilbane Bldg. Co.* (1986), 34 Ohio App.3d 170, 517 N.E.2d 559 (whether a party has agreed to arbitration is a question of law requiring de novo review). Cf. *Bevan v. Owens–Illinois, Inc.*, Cuyahoga App. No. 84776, 2005-Ohio-2323, 2005 WL 1119804; *Strasser v. Fortney & Weygandt, Inc.*, Cuyahoga App. No. 79621, 2001 WL 1637502; *Sikes v. Ganley Pontiac Honda* (Sept. 13, 2001), Cuyahoga App. No. 79015, 2001 WL

---

1. An order granting or denying a stay of an action pending arbitration is a final appealable order pursuant to R.C. 2711.02(C).

1075726 (the appropriate standard of review is abuse of discretion). Under either standard, we find that the trial court did not err in denying appellants' motion.

{¶ 7} It is undisputed that Caputo opened a credit account with Saks in 1992. That account was subject to a credit card agreement between Caputo and an affiliate of Saks. In March 1999, Caputo was advised that an arbitration provision was being added to her credit card agreement and that subsequent use of her Saks credit card would indicate her acceptance of the arbitration provision in the new agreement.

{¶ 8} The arbitration provision, set forth in paragraph 18 of the new agreement, reads as follows:

{¶ 9} "Arbitration for Disputes; No Jury Trial or Class Actions. This paragraph describes how all Claims (as defined in A. below) will be arbitrated instead of litigated in court.

{¶ 10} "* * *

{¶ 11} "If we or you request arbitration of a Claim, we and you will not have the right to litigate the Claim in court. This means (1) there will be no jury trial on the Claim, (2) no prearbitration discovery except as the Rules permit, and (3) no Claim may be arbitrated on a class-action basis, and neither we nor you will have the right to participate as a representative or member of any class of claimants pertaining to any Claim subject to arbitration. Generally, the arbitrator's decision will be final and binding. There are no other rights that you would have if you went to court that also may be available in arbitration."

{¶ 12} "Claim" is defined in the agreement as "all claims, disputes, and controversies between you and us arising from or relating to (1) this Agreement (including but not limited to the validity, scope, and enforceability of this paragraph 18), your Account, or any balance in your Account, and (2) any prior agreement you may have had with us relating to your Account or any balance in your Account. Claims will be given the broadest possible meaning. For example and without limitation, Claim includes all claims, based on contract, tort, fraud, and other intentional torts, statute, common law, and equity, arising from or relating to (I) advertisements and promotions about your Account or Accounts generally, goods or services financed under your Account, and the terms of financing, (II) the Application for your Account, (III) the terms of or the disclosures in this Agreement, and (IV) the monthly statements for your Account. This paragraph 18 will not apply to Claims made in lawsuits filed before we delivered this Agreement to you. However, this paragraph 18 will apply to all other Claims, even if the facts and circumstances giving rise to the Claim existed before we delivered this Agreement to you."

{¶ 13} "Arbitration agreements are generally favored in the law as a less costly and more efficient method of settling disputes." *Vanyo*, 156 Ohio App.3d 706, 808 N.E.2d 482, at ¶ 8, citing *Gerig v. Kahn*, 95 Ohio St.3d 478, 2002-Ohio-2581, 769 N.E.2d 381, at ¶ 20; *Kelm v. Kelm* (2001), 92 Ohio St.3d 223, 225, 749 N.E.2d 299. "Nonetheless, arbitration is a matter of contract and, in spite of the strong policy in its favor, a party cannot be compelled to arbitrate any dispute which he has not agreed to submit." *Teramar Corp. v. Rodier Corp.* (1987), 40 Ohio App.3d 39, 40, 531 N.E.2d 721. See, also, *Harmon v. Philip Morris, Inc.* (1997), 120 Ohio App.3d 187, 189, 697 N.E.2d 270; *Ervin v. Am. Funding Corp.* (1993), 89 Ohio App.3d 519, 625 N.E.2d 635; see, also, *Maestle v. Best Buy Co.*, 100 Ohio St.3d 330, 2003-Ohio-6465, 800 N.E.2d 7, at ¶ 17; *ABM Farms v. Woods* (1998), 81 Ohio St.3d 498, 500, 692 N.E.2d 574.

{¶ 14} Appellee's claim is obviously not covered by the arbitration provision in Caputo's credit agreement with Saks. First, the arbitration agreement is very clear that it is limited to claims arising from or relating to "this Agreement," "your Account," and "any prior agreement you may have had with us relating to your Account or any balance in your Account." Thus, the arbitration clause is specifically limited to disputes regarding the credit agreement, a credit card holder's account, and any balances on that account. Indeed, the "Important Notice" sent by Saks to Caputo in March 1999 advising her of the changes being made to the terms of her credit agreement stated, "We are adding a provision to the New Agreement at paragraph 18 in which both we and you agree to resolve all disputes *involving your account* * * * by arbitration rather than by litigation in court * * *." Here, however, Shumaker does not challenge Caputo's credit agreement with Saks or any balance on that account. Rather, he alleges that appellants' sales practices were unconscionable and a violation of Ohio's Consumer Sales Practices Act. Because his claim is unrelated to Caputo's credit account with Saks, his claim falls outside the definition of a "claim" that must be arbitrated.

{¶ 15} Appellants argue, however, that Shumaker's claim is related to Caputo's credit account because "the relationship between the goods Mrs. Caputo financed and this case is undeniable—if Mrs. Caputo had not made those purchases, there would be no claim of unconscionable sales practices." We make no such connection. The absurdity of appellants' preposterous argument is demonstrated by defense counsel's concession at oral argument that if Caputo had purchased the goods with her Mastercard, the case could proceed without arbitration. Moreover, appellants' argument, taken to its logical conclusion, would require that every tort claim against Saks by one of its credit card holders be arbitrated. Under appellants' theory, even a slip and fall on store property would somehow be an event "relating to" an account with Saks.

{¶ 16} Appellee is not making any claim relating to Caputo's account or even the goods and services purchased on that account. Rather, he is claiming that appellants' conduct in preying on a lonely, elderly lady, even after they were asked to stop, was an unconscionable sales practice in violation of Ohio's Consumer Sales Practices Act. Such a claim is not even remotely related to Caputo's account with Saks.

{¶ 17} Appellants also contend that appellee's claim is subject to arbitration because the definition of "claim" in the arbitration agreement includes statutory claims such as the claim at issue here. We are not persuaded. As defined in the arbitration agreement, any "claim"—whether arising in contract, tort, or statute—must arise from or relate to "(I) advertisements and promotions about your Account or Accounts generally, goods or services financed under your Account, and the terms of financing, (II) the Application for your Account, (III) the terms of or the disclosures in this Agreement, and (IV) the monthly statements for your Account." Shumaker's claim about appellants' sales practices does not arise from or relate to any of these situations.

{¶ 18} Appellants cite *Vincent v. Neyer* (2000), 139 Ohio App.3d 848, 745 N.E.2d 1127, and *Joseph v. MBNA Am. Bank*, 148 Ohio App.3d 660, 2002-Ohio-4090, 775 N.E.2d 550, in support of their argument that the "strong presumption favoring arbitration exists even when the plaintiff's claims are based on consumer protection statutes." Both cases are easily distinguishable from the facts of this case, however.

{¶ 19} In *Vincent*, the plaintiffs entered into a written contract with a dance studio for dance lessons. When the studio informed the plaintiffs that the dance instructor they had contracted for was no longer with the studio, the plaintiffs filed suit for, among other claims, violation of Ohio's Prepaid Entertainment Contract Act. The dance studio, citing an arbitration clause in the agreement, moved for a stay pending arbitration. The trial court granted the motion, and the appellate court affirmed, because the arbitration clause required arbitration of "[a]ny controversy or claim arising out of or relating to this agreement." Id., 139 Ohio App.3d at 851, 745 N.E.2d 1127. The arbitration clause at issue in this case, however, is not nearly as broad as that in *Vincent*. The arbitration provision at issue here is limited to disputes over the credit agreement and the card holder's account, neither of which is in dispute here.

{¶ 20} *Joseph*, supra, is also easily distinguishable from this case. In *Joseph*, the broadly worded arbitration provision provided that "[a]ny claim or dispute * * * arising from or relating in any way to this Agreement or any prior Agreement or your account (whether under a statute, in contract, tort, or otherwise * * *) * * * shall be resolved by binding arbitration." Accordingly, the appellate court affirmed the trial court's stay of proceedings and order to

arbitrate the plaintiffs' claims that MBNA had failed to investigate a vendor transaction on their credit card, credit their account, and correct the vendor billing error. In *Joseph,* unlike this case, the transactions giving rise to the dispute obviously arose out of and were intimately related to the plaintiffs' credit agreement with MBNA. Here, however, appellants' alleged tortious acts are unrelated to Caputo's credit account with Saks.

{¶ 21} Despite the strong public policy in favor of arbitration, "[i]t is basic law that a party cannot be required to arbitrate that which has not been agreed as a subject of arbitration." *Joseph,* 148 Ohio App.3d 660, 2002-Ohio-4090, 775 N.E.2d 550, at ¶ 5. Because the arbitration provision at issue does not apply to this dispute, the trial court properly denied appellants' motion to stay proceedings and compel arbitration.

Judgment affirmed.

SWEENEY, P.J., and KILBANE, J., concur.