JOURNAL ENTRY AND OPINION
{¶ 1} Defendants Great Lakes National Mortgage Co., Global Service Providers, Nicholas P. Mayer, (collectively referred to as "the Great Lakes Defendants") appeal from the order of the trial court that denied their motion to compel arbitration of claims raised by plaintiffs Frankie Jo Henry, Felicia Henry and Betty Jo Henry. As plaintiffs' claims are independent of the arbitration provision, and instead accuse defendants of extensive wrongful conduct both before and after the signing of this document, the claims are outside the scope of the arbitration provision. We therefore affirm the judgment of the trial court. On August 11, 2005, plaintiffs filed this action against the Great Lakes defendants and defendant Candice Robinson. In their amended complaint, plaintiffs alleged in relevant part as follows:
 {¶ 2} "7) In an attempt to save her house located at 18800 Waterbury Avenue * * * Felicia Henry contacted Great Lakes National Mortgage Company (hereinafter "Great Lakes") regarding the Property being in foreclosure and spoke with Defendant Candice Robinson * * *.
 {¶ 3} "8) Defendant Robinson affirmed Plaintiff Felicia Henry's fears by [informing her] that the Property, in fact was in foreclosure.
 {¶ 4} "9) * * * Felicia Henry's Property [was] not in foreclosure when Defendant Robinson told Plaintiff that it was.
 {¶ 5} "10) Defendant Robinson told * * * Felicia Henry she needed approval from her supervisor, Defendant Mayer, for $65,000.00 and that Plaintiff Felicia Henry would have to execute a quitclaim deed and transfer the Property to [Plaintiff] Betty Jo Henry [sister of Felicia Henry and daughter of Frankie Jo Henry] in order to save the Property from foreclosure proceedings.
 {¶ 6} "* * *
 {¶ 7} "14) Defendant Robinson informed Plaintiff Frankie Joe Henry [Felicia's mother] that she could take out a home equity line of credit on her own home and use this equity towards Plaintiff Felicia Henry's Property in order to save it from foreclosure proceedings.
 {¶ 8} "15) At the time she took out the home equity loan, Plaintiff Frankie Henry only owed $9,826.00 on the mortgage to her home located on Melrose Avenue.
 {¶ 9} "16) The home equity loan which Defendant Robinson brokered on behalf of Great Lakes was executed for Plaintiff Frankie Henry in the amount of $90,000.00. After subtracting both the amount still due on her previous mortgage ($9,826.00) and the costs of the transaction ($7,943.00), Plaintiff Frankie Henry had $72,231.00 left with which to save Plaintiff Felicia Henry's `foreclosed' property.
 {¶ 10} "* * *
 {¶ 11} "18) * * * Defendant Robinson sent to Plaintiff Frankie Henry one page of a Mortgage which shows a loan amount of $90,000.00 brokered by Great Lakes National Mortgage. The cash amount to borrower in the amount of $72,231.00 was drawn out from equity of the home and placed in Plaintiff Betty Jo's bank account. Plaintiff Frankie Henry never signed the Acknowledgment and Agreement on the Mortgage Agreement; it was never notarized or perfected or filed in the Cuyahoga County Recorder's Office.
 {¶ 12} "19) After receiving this sum of money, which was deposited in Plaintiff Betty Jo's bank account at Key Bank, on December 4, 2004, Plaintiff Betty Jo Henry wrote two checks to Defendant Robinson, one for $65,000.00 to transfer title in Plaintiff Felicia Henry's house to Plaintiff Betty Jo Henry and the other for $2,400.00 for an attorney who was to get Plaintiff Felicia Henry's house out of foreclosure.
 {¶ 13} "20) Defendant Robinson instructed Plaintiff Betty Jo Henry to make the check * * * in the amount of $65,000.00 and to leave the check blank as to payee. In the presences of Plaintiffs Betty Jo Henry and Frankie Henry, Defendant Robinson wrote the check payable to herself `Candi Robinson @ Great Lakes.'
 {¶ 14} "21) Defendant Robinson instructed Plaintiff Betty Jo Henry to make the second check * * * in the amount of $2,400.00 blank as well. Defendant Robinson later wrote the check payable to herself.
 {¶ 15} "22) * * * Defendant Robinson deposited [the check for $2,400.00] into [her own account] account at Key Bank.
 {¶ 16} "* * *
 {¶ 17} "26) Plaintiff Betty Joe Henry has never received title to Felicia Henry's property from Great Lakes or any of its employees.
 {¶ 18} "* * *
 {¶ 19} "28) Defendant Candice Robinson confessed that she never used the $65,000.00 check to gain title to Felicia Henry's house. Rather, Defendant Candice Robinson used Plaintiff Frankie Henry's equity to purchase [for herself] an investment [property] located at 13816 Elm Avenue in Cleveland, Ohio 44122.
 {¶ 20} "* * *
 {¶ 21} "30) Defendant Candice Robinson asked Plaintiff Frankie Henry to wait until she `flipped' the investment property and make her profit at which point she would give the Plaintiffs their money.
 {¶ 22} "* * *
 {¶ 23} "33) On March 30, 2005, Defendant Mayer convened a meeting held at Great Lakes with himself, Candice Robinson, and Plaintiffs Frankie Henry and Plaintiff Felicia Henry.
 {¶ 24} "34) Defendant Mayer presented an incomplete mortgage Agreement with an amount of $74,000.00 for Defendant Candice Robinson for a property at 13816 Elm Avenue in Cleveland. The agreement was not signed by any of the parties, nor was the document complete. * * *
 {¶ 25} "35) Defendant Mayer presented another Agreement between Great Lakes National Mortgage Banc, Inc. and Defendant Candice Robinson wherein Defendant Robinson agreed to execute a mortgage for the benefit of Defendant Frankie Henry and was signed by Defendant Mayer and Defendant Robinson and two witnesses.
 {¶ 26} "* * *
 {¶ 27} "37) According to the Agreement, Defendant Candice Robinson agreed to pay the principal sum of $74,000.00 plus interest at 9% annum with an initial amount $20,000.00 `to be paid immediately' and $1,500.00 per month thereafter.
 {¶ 28} "* * *
 {¶ 29} "41) Defendants Candice Robinson and Mayer coerced Plaintiff Frankie Henry with assurances that the monies promised would be forthcoming, and Plaintiff Frankie Henry signed the agreement.
 {¶ 30} "* * *
 {¶ 31} "43) Plaintiff Betty Jo Henry was told by Defendant Mayer that she needed to sign the papers in order to get the money back that was paid to Great Lakes.
 {¶ 32} "* * *
 {¶ 33} "45) Defendant Mayer acted in association with Defendant Robinson to defraud Plaintiffs, forcing them to sign illegitimate unconscionable agreements and then did not follow through on their terms."
 {¶ 34} Plaintiffs set forth claims for promissory estoppel, promissory fraud, fraudulent inducement and procedural unconscionability, fraud in the factum, intentional infliction of emotional distress, conversion, violations of R.C. 1322.02, R.C.1322.07, R.C. 1322.08, and R.C. 1322.062, breach of fiduciary duty, violation of R.C. 2913.05, R.C. 2913.02, R.C. 2913.51, and R.C. 2913.31, violation of R.C. 2921.12, and violation of R.C.2923.32.
 {¶ 35} The Great Lakes Defendants denied liability and asserted a three claim counterclaim against plaintiffs, and a cross-claim against Robinson. The Great Lakes Defendants also moved to stay proceedings pending binding arbitration. These defendants asserted that an agreement signed by Plaintiff Frankie Henry on October 14, 2004 contains an Arbitration Agreement which requires arbitration of disputes "concerning any aspect, part portion or the performance (or the claimed non-performance) of Great Lakes National Mortgage Co. as it pertains to any part of portion of any loan or loan application[.]"
 {¶ 36} In opposition, Plaintiff Frankie Jo Henry averred that she did not sign this document and was in fact in Florida on October 14, 2004. Plaintiffs further argued that defendants waived the arbitration provision and that they were barred by the doctrine of unclean hands from invoking this provision.
 {¶ 37} The trial court denied the Great Lakes Defendants' motion and they now appeal, assigning two related errors for our review.
 {¶ 38} The Great Lakes Defendants' assignments of error state:
 {¶ 39} "The trial court erred by denying Appellants' motion to stay proceedings pending binding arbitration."
 {¶ 40} "The trial court erred by ruling upon Appellants' motion to stay proceedings pending binding arbitration without holding a trial or a formal hearing regarding the validity of the arbitration provision."
 {¶ 41} R.C. 2711.01 (A) provides:
 {¶ 42} "A provision in any written contract, except as provided in division (B) of this section, to settle by arbitration a controversy that subsequently arises out of the contract, or out of the refusal to perform the whole or any part of the contract, or any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, or arising after the agreement to submit, from a relationship then existing between them or that they simultaneously create, shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract."
 {¶ 43} Nonetheless, when a matter is clearly independent of and outside the scope of an arbitration agreement, a stay of proceedings pending arbitration is unwarranted. Dillard v. FifthThird Bank, Cuyahoga App. No. 86004, 2005-Ohio-6341, citingHollinger v. Keybank National Assn., Summit App. No. 22147,2004-Ohio-7182. The Dillard Court explained:
 {¶ 44} "The claims are unrelated to the IRA agreement. No claims of misconduct are alleged with respect to the IRA agreement itself or with respect to the funds therein, such as an improper transfer of funds. Rather, the claims raised in this action involve the conduct of the bank with respect to the loan obtained by Dillard. Simply put, this matter concerns a loan that a father obtained to help his son, allegedly without expecting to incur in excess of $70,000 of tax liability. Because the claims are independent of the IRA agreement, they fall outside the scope of the arbitration provision."
 {¶ 45} See, also, Schumaker v. Saks, Inc.,163 Ohio App.3d 173, 2005-Ohio-4391, 837 N.E.2d 393, in which this court stated:
 {¶ 46} "* * * Schumaker does not challenge Caputo's credit agreement with Saks or any balance on that account. Rather, he alleges that appellants' sales practices were unconscionable and a violation of Ohio's Consumer Sales Practices Act. Because his claim is unrelated to Caputo's credit account with Saks, his claim falls outside the definition of a `claim' that must be arbitrated.
 {¶ 47} "* * *
 {¶ 48} "Appellee is not making any claim relating to Caputo's account or even the goods and services purchased on that account. Rather, he is claiming that appellants' conduct in preying on a lonely, elderly lady, even after they were asked to stop, was an unconscionable sales practice in violation of Ohio's Consumer Sales Practices Act. Such a claim is not even remotely related to Caputo's account with Saks."
 {¶ 49} Accord Complete Pers. Logistics, Inc. v. Patton,
Cuyahoga App. No. 86857, 2006-Ohio-3356 (tort claims that may be asserted independently, without reference to the contract, fall outside the scope of the arbitration provision).
 {¶ 50} In this matter, we initially note that the Great Lakes defendants are relying upon an agreement purportedly signed by Plaintiff Frankie Henry on October 14, 2004, but there are three plaintiffs in this action who have numerous causes of action. In addition, the complaint alleges that the other documents from this date were not completely executed, the Acknowledgment and Agreement on the Mortgage was not properly signed, notarized or filed in the Cuyahoga County Recorder's Office. Moreover, the complaint also alleges that the documents of this date were all prepared in connection with fraudulent conduct alleged to persuade Frankie Jo Henry to take out a home equity loan, the claim that Felicia Henry's property would be transferred to Betty Jo, the failure to effect such transfer, and the misappropriation of proceeds of that loan. In short, plaintiffs have alleged that defendants engaged in extensive wrongful conduct both before and after the purported signing of the October 14, 2004 document. Plaintiffs have alleged various claims including fraud, fraudulent inducement and procedural unconscionability, fraud in the factum, intentional infliction of emotional distress, conversion, in connection with the defendants' claims that Felicia Henry's home was in foreclosure, the misappropriation of those loan proceeds, as well as the alleged "settlement" of that alleged misappropriation, and defendants' alleged failure to "follow through" on the terms of this "settlement." These alleged matters precede and subsume the October 14, 2004 purported transaction. We therefore conclude that these claims arise from defendants' alleged wrongful conduct which is clearly independent of and outside the scope of the October 14, 2004 arbitration provision purportedly signed by Plaintiff Frankie Jo Henry. Accordingly, this matter is not subject to arbitration and the trial court properly denied the Great Lakes Defendants' motion for a stay pending binding arbitration.
 {¶ 51} The assignments of error lack merit.
Affirmed.
It is ordered that appellees recover from appellants costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, JR., J., and Nahra, J.,* Concur.
* (Sitting By Assignment: Judge Joseph J. Nahra, Retired, of the Eighth District Court of Appeals).