[Cite as *Drake v. Barclay's Bank Delaware, Inc.*, 2011-Ohio-5275.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   96451

## SHIRLEY DRAKE

PLAINTIFF-APPELLANT

vs.

## BARCLAYS BANK DELAWARE, INC., ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
**REVERSED AND REMANDED**

Civil Appeal from the
Cuyahoga County Common Pleas Court
Case No.   CV-734663

**BEFORE:**   Boyle, P.J., Rocco, J., and Keough, J.

**RELEASED AND JOURNALIZED:**   October 13, 2011

**ATTORNEY FOR APPELLANT**

J. Gary Seewald
Law Firm of J. Gary Seewald
The Bradley Building, Suite 205
1220 West 6th Street
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEES**

K.   Isaac Devyver
Dustin N.   Pickens
Reed Smith Centre
225 Fifth Avenue
Suite 1200
Pittsburgh, Pennsylvania   15222


MARY J. BOYLE, P.J.:

{¶ 1}  Plaintiff-appellant, Shirley Drake, appeals from the judgment of the trial court submitting his case to arbitration and staying the proceedings.   We find merit to his appeal and reverse and remand.

{¶ 2}  In August 2010, Drake filed a complaint against defendants-appellees, Barclays Bank Delaware, Inc. and Juniper Card Services, alleging fraud, breach of contract, and various consumer violations.   According to the complaint, Drake entered into a contract with appellees for credit card services sometime prior to 2009.   Drake

closed his credit card account in July 2009. In November of that same year, Drake entered into an oral agreement with appellees where he agreed to pay them $100 per month for the months of November, December, and January. Drake claims that he paid appellees as agreed, but asserts that appellees removed an extra $98 from his National City Bank account for the months of December 2009 and January 2010 without his approval for a total of $196, which also resulted in two returned check fees totaling $146.

{¶ 3} In October 2010, appellees moved to stay the proceedings and to compel arbitration. In February 2011, appellees withdrew their motion to compel arbitration, and moved "only for an order staying the proceedings in accordance with [R.C.] 2711.02," which the trial court granted. It is from this judgment that Drake appeals, raising two assignments of error for our review:

{¶ 4} "[1.] The trial court erred in granting the defendant[-]appellee's motion to compel arbitration because the arbitration clause as found in the contract prepared by the defendant-appellee is both substantively and procedurally unconscionable.

{¶ 5} "[2.] The trial court erred in granting the defendant-appellee's motion to compel arbitration thereby halting further legal proceedings and enforcing the arbitration provision contained in an adhesion contract for a credit card without a hearing."

### Hearing Requirement

{¶ 6} We will address Drake's second assignment of error first. In doing so, we

conclude that there is no merit to his argument that a hearing was required. Because appellees only moved to stay the proceedings pursuant to R.C. 2711.02, the trial court was not required to hold a hearing. *Maestle v. Best Buy Co.*, 100 Ohio St.3d 330, 2003-Ohio-6465, 800 N.E.2d 7, syllabus; *Castron v. Higginbotham*, 8th Dist. No. 88559, 2007-Ohio-3260, ¶9. Although R.C. 2711.03 contains a requirement for a hearing when a party files a motion to compel arbitration, appellees withdrew that portion of their motion and only sought to stay the proceedings pending arbitration; thus, this provision is inapplicable. See *Marks v. Morgan Stanley Dean Witter Commercial Fin. Serv., Inc.*, 8th Dist. No. 88948, 2008-Ohio-1820.

{¶ 7} Drake's second assignment of error is overruled.

The Ohio Arbitration Act

{¶ 8} In *Taylor Bldg. Corp. of Am.*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶25-29, the Ohio Supreme Court set forth the law on arbitration:

{¶ 9} "The Ohio General Assembly in R.C. Chapter 2711 has expressed a strong policy favoring arbitration of disputes. R.C. 2711.01(A) provides:

{¶ 10} "'A provision in any written contract *** to settle by arbitration a controversy that subsequently arises out of the contract, or out of the refusal to perform the whole or any part of the contract, or any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, or arising after the agreement to submit, *** shall be valid,

irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract.'

{¶ 11} "Indeed, the Ohio courts recognize a 'presumption favoring arbitration' that arises 'when the claim in dispute falls within the scope of the arbitration provision.' *Williams v. Aetna Fin. Co.* (1998), 83 Ohio St.3d 464, 471, 700 N.E.2d 859; see, also, *Ignazio v. Clear Channel Broadcasting, Inc.*, 113 Ohio St.3d 276, 2007-Ohio-1947, 865 N.E.2d 18, ¶18.[1]

{¶ 12} "Ohio law directs trial courts to grant a stay of litigation in favor of arbitration pursuant to a written arbitration agreement on application of one of the parties, in accordance with R.C. 2711.02(B). That statute provides:

{¶ 13} "'If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with

---

[1] Ohio's strong policy favoring arbitration is consistent with federal law supporting arbitration. See Federal Arbitration Act, Section 2, Title 9, U.S.Code ("A written provision in *** a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract").

arbitration.'"

{¶ 14} This court has recognized the "strong presumption in favor of arbitration as an efficient and economical alternative dispute mechanism." *Marks*, 2008-Ohio-1820, at ¶15, citing *Schaefer v. Allstate Ins. Co.* (1992), 63 Ohio St.3d 708, 712, 590 N.E.2d 1242. We further explained that "[a]n arbitration clause in a contract is generally viewed as an expression that the parties agreed to arbitrate disagreements within the scope of the arbitration clause and with limited exceptions, an arbitration clause is to be upheld just as any other provision in a contract should be respected." Id., citing *Council of Smaller Ents. v. Gates, McDonald & Co.* (1998), 80 Ohio St.3d 661, 668, 687 N.E.2d 1352. But despite this "strong presumption" in favor of arbitration, we pointed out that "parties cannot be compelled to arbitrate a dispute in which they have not agreed to submit to arbitration." Id., citing (among others) *Shumaker v. Saks, Inc.*, 163 Ohio App.3d 173, 2005-Ohio-4391, 837 N.E.2d 393.

Arbitration Clause

{¶ 15} In his first assignment of error, Drake contends that the arbitration provision in the credit card agreement was procedurally and substantively unconscionable. Within this assignment of error, he also argues that the arbitration clause was not applicable to his claims. After a thorough review of the record in this case, we agree with Drake that the claims he brought against appellees do not fall within the scope of the arbitration clause.

{¶ 16} The arbitration provision here provided:

{¶ 17} "Any claim, dispute or controversy ('Claim') by either you or us against the other, or against the employees, agents or assigns of the other, arising from or relating in any way to this Agreement or your Account, or any transaction on your Account including (without limitation) Claims based on contract, tort (including intentional torts), fraud, agency, negligence, statutory or regulatory provisions or any other source of law and Claims regarding the applicability of this arbitration clause or the validity of the entire Agreement, shall be resolved exclusively and finally by binding arbitration under the rules and procedures of the arbitration Administrator selected at the time the Claim is filed. The Administrator selection process is set forth below. For purposes of this provision, 'you' includes any authorized user on the Account, agents, beneficiaries or assign of you; and 'we' or 'us' includes our employees, parents, subsidiaries, affiliates, beneficiaries, agents and assigns. Claims made and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual basis, not on a class or representative basis. ***"

{¶ 18} Drake contends, and we agree, that this case is analogous to the facts in *Shumaker*, 163 Ohio App.3d 173. In *Shumaker*, this court found that the claims brought by the plaintiff were not covered by the arbitration provision in a credit card agreement. Id. at ¶14.

{¶ 19} The plaintiff in *Shumaker* was the administrator of the estate of Delma

Caputo. The plaintiff brought claims against Saks Fifth Avenue ("Saks"), alleging that a personal shopper from Saks would visit Caputo in her home and sell her goods and services from Saks. Caputo was "entirely housebound," lived alone, and desired companionship. At the time of Caputo's death, her family found over $100,000 worth of items from Saks in her home that were charged to her Saks' credit card. The items had never been used and still bore Saks tags, and some were still in their original packaging. Saks moved to stay the proceedings pursuant to an arbitration clause in Caputo's credit card agreement, which the trial court denied. This court upheld the trial court's decision for a number of reasons. We explained:

{¶ 20} "First, the arbitration agreement is very clear that it is limited to claims arising from or relating to 'this Agreement,' 'your Account,' and 'any prior agreement you may have had with us relating to your Account or any balance in your Account.' Thus, the arbitration clause is specifically limited to disputes regarding the credit agreement, a credit card holder's account, and any balances on that account. *** Here, however, [the plaintiff] does not challenge Caputo's credit agreement with Saks or any balance on that account. Rather, he alleges that [Saks'] sales practices were unconscionable and a violation of Ohio's Consumer Sales Practices Act. Because his claim is unrelated to Caputo's credit account with Saks, his claim falls outside the definition of a 'claim' that must be arbitrated." Id. at ¶14.

{¶ 21} We further explained: "[plaintiff] is not making any claim relating to

Caputo's account or even the goods and services purchased on that account. Rather, he is claiming that appellants' conduct in preying on a lonely, elderly lady, even after they were asked to stop, was an unconscionable sales practice in violation of Ohio's Consumer Sales Practices Act. Such a claim is not even remotely related to Caputo's account with Saks." Id. at ¶16.

{¶ 22} Here, as in *Shumaker*, the arbitration provision is limited to claims "arising from or relating in any way to this Agreement or your Account, or any transaction on your Account ***." All of Drake's claims are based on the alleged facts set forth in his complaint that appellees removed unauthorized funds from his bank account and the resulting improper returned check fees, thereby alleging that appellees committed theft under R.C. 2913.02 and unauthorized use of property under R.C. 2913.04, and committed various consumer violations. None of Drake's claims are related to his credit card agreement or account that he had with appellees.

{¶ 23} Appellees disagree that *Shumaker* is analogous to this case, and they argue that the facts of this case are more akin to *Joseph v. M.B.N.A. Am. Bank, N.A.*, 148 Ohio App.3d 660, 2002-Ohio-4090, 775 N.E.2d 550. Saks made the same argument in *Shumaker*, and this court found *Joseph* "easily distinguishable." *Shumaker* at ¶20. We explained:

{¶ 24} "In *Joseph*, the broadly worded arbitration provision provided that '[a]ny claim or dispute *** arising from or relating in any way to this Agreement or any prior

Agreement or your account (whether under a statute, in contract, tort, or otherwise * * *) *** shall be resolved by binding arbitration." Accordingly, the appellate court affirmed the trial court's stay of proceedings and order to arbitrate the plaintiffs' claims that MBNA had failed to investigate a vendor transaction on their credit card, credit their account, and correct the vendor billing error. In *Joseph*, unlike this case, the transactions giving rise to the dispute obviously arose out of and were intimately related to the plaintiffs' credit agreement with MBNA." (Emphasis added.) *Shumaker* at ¶20.

{¶ 25} Here, just as in *Shumaker*, Drake's claims did not arise out of and were not at all related to his credit card agreement with appellees.

{¶ 26} Despite the strong public policy in favor of arbitration, "[i]t is basic law that a party cannot be required to arbitrate that which has not been agreed as a subject of arbitration." *Joseph*, 148 Ohio App.3d at ¶5. Because the arbitration provision at issue does not apply to this dispute, the trial court erred when it granted appellees' motion to stay the proceedings pending arbitration.

{¶ 27} Drake's first assignment of error is sustained with respect to his argument that the arbitration provision does not cover his claims. Thus, we need not address his arguments relating to unconscionability.

{¶ 28} Judgment reversed and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE,   PRESIDING JUDGE

KENNETH A.   ROCCO, J., and
KATHLEEN ANN KEOUGH, J., CONCUR