[Cite as *Thompson v. OneMain Fin. Branch #350081*, 2016-Ohio-5705.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

## JOURNAL ENTRY AND OPINION
### No. 103581

---

## ALVIN THOMPSON

### PLAINTIFF-APPELLANT

vs.

## ONEMAIN FINANCIAL — BRANCH #350081, ET AL.

### DEFENDANTS-APPELLEES

---

## JUDGMENT:
### AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-15-848751

**BEFORE:** Laster Mays, J., Kilbane, P.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** September 8, 2016

**FOR APPELLANT**

Alvin Thompson, pro se
10801 Union Avenue
Cleveland, Ohio 44105


**ATTORNEYS FOR APPELLEES**

Robert C. Folland
David J. Dirisamer
Barnes & Thornburg, L.L.P.
41 South High Street, Suite 3300
Columbus, Ohio 43215

ANITA LASTER MAYS, J.:

**{¶1}** Plaintiff-appellant Alvin Thompson ("Thompson"), appearing pro se, appeals the trial court's grant of the motion to stay the proceedings pending arbitration requested by defendants-appellants OneMain Financial ("OneMain") and OneMain's employee Sam David Calvin ("Calvin"). After a review of the record, we affirm the trial court's decision.

## I.    BACKGROUND AND FACTS

**{¶2}** Thompson initiated the instant action seeking damages from OneMain and Calvin for harassment, intimidation, unfair business practices, pain, suffering, undue stress, and legal expenses as the result of intimidating and harassing   collection efforts by OneMain and Calvin.   OneMain is one of the largest subprime lenders in America.

**{¶3}** Thompson's prior loan with OneMain was paid in full as agreed. Based on that relationship, Thompson approached OneMain for a subsequent loan, explaining a portion of the proceeds was needed to defray funeral expenses for his grandson, who died as the result of a swimming accident.

**{¶4}** Thompson and OneMain entered into an agreement for an unsecured loan on December 2, 2014.   The Disclosure Statement Note ("Note") and Security Agreement documents provide for the following:   (1) a 26.19 percent annual percentage rate of

interest; (2) the amount financed was $10,364.84; (3) a finance charge of $8,419.03; (4) a $250 origination fee; and (5) a total repayment amount of $18,783.87.

{¶5} The Note is for a 60-month term. Payments are due on the 15th of each month, with the first payment due on January 15, 2015. The default clause advises that any payment that is not made on time constitutes a default. The Note also provides that the borrower should refer to "the contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties." However, the Note and Arbitration Agreement ("Agreement") are the only documents appearing in the record as evidence of the loan.

{¶6} The third page of the Note provides that the parties concurrently entered into the Agreement, also incorporated by reference. The first paragraph of the two-page Agreement advises in bold type that disputes will be resolved by mandatory, binding arbitration, not a judge or jury, and that "the arbitration procedures are simpler and more limited than rules applicable in court." The scope of the arbitration is broad and includes, in part: (1) any case, controversy, dispute, tort, disagreement, lawsuit, or claim now or hereafter existing; (2) the enforceability and arbitrability of the Note or Agreement including questions regarding the scope; (3) any act or omission by OneMain, its employees and affiliates; (4) fraud; (5) any federal or state statute or regulation, or any alleged violation thereof, including insurance, usury and lending laws; (6) any dispute about servicing collecting or enforcing a credit transaction.

{¶7} The party initiating the arbitration may select either the American Arbitration Association or National Arbitration Forum. Cost allocations are detailed, and

generally, each party pays its own costs unless otherwise required by law or other terms of the Note.

{¶8} Thompson stated during oral argument before this court that he requested that the due date be scheduled for the end of the month, or beginning of the succeeding month, as payments would be remitted upon receipt of his retirement and social security checks on the first of each month. OneMain responded that they could not accommodate the request but their Note was subject to a ten-day grace period.

{¶9} Thompson asserts that, one or two days after the due date of the first payment, both Calvin and representatives of OneMain began calling and emailing him repeatedly. In response to Thompson's complaints about the harassment, Calvin and OneMain's branch manager explained that the automated dialing system malfunctioned, and that neither party knew the other was emailing and calling Thompson.

{¶10} In spite of the explanation, the calls and emails continued the next month from the due date until the payment was made two weeks later, when Thompson received his monthly income checks. In March 2015, Thompson again asked Calvin to stop the harassment, explaining that he suffered from post traumatic stress disorder ("PTSD") as the result of his service in the armed forces, and that he could not handle the stress. Thompson assured Calvin that he would continue to make the payments and keep in touch with Calvin to assure him of that. Thompson also admonished that he would pursue legal action if the pattern of harassment continued.

{¶11} The pattern continued and Thompson reduced his responsiveness to the calls and emails, and began answering or returning calls once or twice a week to assure

appellees that they would receive the funds. Thompson maintains that he has continued to make his payments when his monthly checks are received, and his account status has never been 30 days late.

**{¶12}** Thompson next notified Calvin that he would no longer entertain the constant calls and emails about the account. Any contact was to be made by mail or through the court. The contacts continued.

**{¶13}** A day or two after the notification, Calvin left a message for Thompson's daughter, who is not a signatory on the loan, to contact Calvin to discuss her father's past due account. The call was made during the anniversary of her late son's birthday. This action served as the final straw for Thompson, and the current lawsuit ensued.

**{¶14}** OneMain and Calvin filed a "motion to stay proceedings and compel arbitration." Thompson's responsive arguments included that: (1) OneMain and Calvin waived their right to arbitrate or file a civil action, by electing to continue the harassment; (2) that, if he was in default, the arbitration "is no longer a requirement."

**{¶15}** On September 14, 2015, the trial court issued its findings, without holding a hearing. Citing Ohio's strong policy favoring arbitration, the trial court held:

> In this case, plaintiff argues that the arbitration agreement cannot be enforced because "the constitution of the United States forbid[s] any law or contract being made that would abridge any person's civil rights." Furthermore, plaintiff asserts that "defendants chose to violate all moral and legal boundaries and harass, intimidate and violate plaintiff's civil rights causing mental stress, headaches, and mental anguish against plaintiff."
>
> Plaintiff's brief in opposition to defendants' motion to compel arbitration fails to refute the validity of the arbitration agreement in dispute. That agreement states that "all disputes between borrower and certain other persons on the one hand and lender and certain other persons and entities on

the other hand * * * will be resolved by mandatory, binding arbitration. You thus give up your right to go to court to assert or defend your rights. * * * your rights will be determined by a neutral arbitrator and not a judge or jury."

Upon review of the briefing in this case, the court finds that defendants' motion to compel arbitration to be well-taken. All proceedings in this matter are stayed for six months to allow the parties to arbitrate their dispute.

**{¶16}** Thompson appealed.

## II.   ASSIGNMENTS OF ERROR

**{¶17}** Thompson proffers two assignments of error that are set forth verbatim:

I.   Trial court erred in denying plaintiff's motion to stay proceedings and compel arbitration because grounds that exist at law or in equity for the revocation of any contract were clearly announced in plaintiff-appellant's claims in this case.

II.   Trial court erred in granting appellees' motion to stay and compel arbitration because it omitted that *Hayes v. Oakridge Homes*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, does not contain grounds, support, compatibility and authority.   And in omitting that R.C. 2711.01 provides exception that revokes any arbitration agreement.

**{¶18}** For the purpose of judicial economy, we present a combined response. Distilled, we interpret Thompson's argument to be that the trial court erred in finding that the Agreement is valid and enforceable, because grounds exist supporting revocation of the Agreement.   We disagree.

## III.   STANDARD OF REVIEW

**{¶19}** The question of "whether a party has agreed to submit an issue to arbitration or questions of unconscionability are reviewed under a de novo standard of review."   *Skerlec v. Ganley Chevrolet, Inc.*, 8th Dist. Cuyahoga No. 98247, 2012-Ohio-5748, ¶ 6, citing   *Shumaker v. Saks Inc.*, 163 Ohio App.3d 173,

2005-Ohio-4391, 837 N.E.2d 393 (8th Dist.); *Taylor Bldg. Corp. of Am. v. Benfield,* 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12.

## IV.    LAW AND ANALYSIS

**{¶20}**    There is a presumption in favor of arbitration where the disputed issue falls within the scope of the arbitration agreement, "except upon grounds that exist at law or in equity for the revocation of any contract." *Taylor Bldg.*  at ¶ 33, quoting R.C. 2711.01(A); *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 471, 700 N.E.2d 859 (1998). The arbitration provisions must apply to the disputed issue for an arbitration clause or agreement to be enforceable. *Academy of Medicine v. Aetna Health, Inc.*, 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488, ¶ 11 -14; *Ghanem v. Am. Greetings Corp.*, 8th Dist. Cuyahoga No. 82316, 2003-Ohio-5935, ¶12.

**{¶21}**    In addition, "[a]n arbitration agreement will be enforced unless the court is firmly convinced that (1) the clause is inapplicable to the dispute or issue in question, or (2) the parties did not agree to the clause." *Moore v. Houses on the Move, Inc*., 177 Ohio App.3d 585, 2008-Ohio-3552, 895 N.E.2d 579, ¶ 22 (8th Dist.), citing *Ervin v. Am. Funding Corp*., 89 Ohio App.3d 519, 625 N.E.2d 635 (12th Dist.1993).

**{¶22}**    R.C. 2711.01(A) provides in pertinent part:

> (A) A provision in any written contract, except as provided in division (B) of this section, to settle by arbitration a controversy that subsequently arises out of the contract, or out of the refusal to perform the whole or any part of the contract, or any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, or arising after the agreement to submit, from a relationship then existing between them or that they simultaneously create, *shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract.*

(Emphasis added.) *Id.* While Thompson argues that grounds exist requiring revocation of the Agreement, he cites no facts or law identifying what those grounds are. In fact, Thompson argues the validity of his claims and not the enforceability of the agreement.

{¶23} There is no evidence that the acts or omissions complained of are outside of the scope of the Agreement. *Ghanem*, 8th Dist. Cuyahoga No. 82316, 2003-Ohio-5935, ¶12. The Agreement is comprehensive, and defines a claim to include, "any case, controversy, dispute, tort, disagreement, lawsuit, or claim now or hereafter existing." A claim also includes, in part, the following: (1) any act or omission by OneMain, its employees and affiliates; (2) fraud or misrepresentation; (3) federal or state statute or regulation, or any alleged violation thereof; (4) any dispute about closing, servicing, collecting, or enforcing a loan transaction; and (5) a dispute regarding the enforceability of the arbitration, including the scope of the Agreement. Thus, the Agreement covers Thompson's claims in this case.

{¶24} It is also true that agreements to arbitrate are governed by basic contract principles of offer, acceptance, and consideration. *Maestle v. Best Buy Co.*, 8th Dist. Cuyahoga No. 79827, 2005-Ohio-4120, ¶ 23. Thompson does not present an argument as to how the Agreement is invalid or otherwise unenforceable based on traditional contract defenses such as fraud, duress, or coercion. *Moore*, 177 Ohio App.3d 585, 2008-Ohio-3552, 895 N.E.2d 579, ¶ 22 (8th Dist.); *Mears v. Zeppe's Franchise Dev*., 8th Dist. Cuyahoga No. 90312, 2009-Ohio-27, ¶ 17 and 18; and *Williams,* 83 Ohio St.3d 464, 471, 700 N.E.2d 859.

**{¶25}** Also lacking here is support for an argument that the Agreement is unenforceable due to unconscionability. There are two facets to unconscionability, substantive and procedural. Procedural unconscionability involves the process of entering into the Agreement. *Taylor Bldg*., 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, at ¶ 34; *Hayes,* 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 30.

**{¶26}** Substantive unconscionability focuses on the contract provisions:

> "Substantive unconscionability pertains to the contract itself, without any consideration of the individual contracting parties, and requires a determination of whether the contract terms are commercially reasonable in the context of the transaction involved." *Wallace v. Ganley Auto Group*, 8th Dist. Cuyahoga No. 95081, 2011-Ohio-2909, ¶ 21.

*Vasil v. Pulte Homes of Ohio, L.L.C.*, 8th Dist. Cuyahoga No. 102212, 2015-Ohio-2407*,* ¶ 17.

**{¶27}** "The party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionable." *Hayes* at ¶ 20. Thompson does not identify improprieties in the process of entering into the Agreement, nor has he offered evidence that the terms of the Agreement are unfair or unreasonable. Thompson focuses on the underlying allegations of misconduct, harassment, and related claims against OneMain and Calvin.

**{¶28}** This court extends its sincere condolences to Thompson on the loss of his beloved grandson. We do not, however, address the merits of Thompson's underlying claims against OneMain and Calvin in this appeal. The issue on appeal is limited to whether the Agreement is enforceable, and the stay pending arbitration properly granted.

**{¶29}** "Under Ohio law, pro se litigants are held to the same standard as all other litigants." *Bikkani v. Lee*, 8th Dist. Cuyahoga No. 89312, 2008-Ohio-3130, ¶ 29, citing *Kilroy v. B.H. Lakeshore Co.*, 111 Ohio App.3d 357, 363, 676 N.E.2d 171 (8th Dist.1996). Thompson has not demonstrated, as a matter of law or fact, that the Agreement is not enforceable. Appellant's first and second assignments of error are overruled.

**{¶30}** The decision of the trial court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

MARY EILEEN KILBANE, P.J., and
MARY J. BOYLE, J., CONCUR