{¶ 1} Appellant, All Erection Crane Rental Corporation ("EC"), appeals the trial court's judgment in favor of Trispan Corporation ("Trispan"). After a thorough review of the record, and for the reasons set forth below, we affirm.
 {¶ 2} On July 13, 2007, Trispan needed one of its cranes repaired. It went to EC, which is a crane rental, repair, and sales shop. While there were various problems with the crane, the problem with the crane's swivel can is the subject of this appeal. After making the repairs, EC created a Work Report that stated "remove hydraulic swivel can and repack, install repaired swivel can." On July 25, 2007, EC invoiced Trispan for $7,887.62 in costs. The charges pertaining to the swivel can reflected $500 to rechrome and rehone the swivel can to factory specifications and $458.51 for a swivel seal kit.[1] Trispan paid the invoice in full.
 {¶ 3} According to EC, the swivel can on Trispan's crane was broken and needed to be renickled. EC had to send the swivel can to Ohio Machinery Co., dba Ohio CAT ("Ohio CAT"), for the appropriate repairs. Ohio CAT estimated that it would take several weeks to make the repairs. Rather than make Trispan wait for the repairs, EC decided to install its own spare swivel can onto Trispan's crane. EC's plan was to then replace its spare swivel can with the one that Ohio CAT would eventually repair and return. According to EC, it did this in the spirit of *Page 4 
customer service so that Trispan would not have to wait for the repairs to the crane, which it claimed it needed as soon as possible.
 {¶ 4} On August 19, 2007, after Ohio CAT repaired the swivel can, it invoiced EC for $3,406.75. On September 17, 2007, EC presented Trispan with a new invoice for $3,406.75 for charges it incurred when it sent the swivel can to Ohio CAT to be rechromed and rehoned to factory specifications. EC later amended that invoice to reflect the $537.50 ($500 plus tax) that Trispan had already paid for the rechroming and rehoning on the original invoice. Trispan refused to pay the invoice because it argued it did not authorize EC to allow third-party repairs and thereafter charge Trispan for the costs. Trispan argued that EC never advised that there might be additional costs or repairs and, when it paid the original invoice, it believed that the transaction was complete.
 {¶ 5} On November 26, 2007, EC brought a law suit against Trispan in the Garfield Heights Municipal Court in order to recover the additional costs. On May 5, 2008, a bench trial began. On that same date, the trial court concluded that EC failed to demonstrate there was an agreement between the parties that required Trispan to pay for third-party repairs to EC's swivel can, and the trial court entered judgment in favor of Trispan.
 Review and Analysis {¶ 6} EC brings this appeal, asserting one assignment of error for our review.
 {¶ 7} "I. Incorrect writing chosen as contract as a matter of law." *Page 5 
 {¶ 8} EC argues that the trial court erred when it ruled in favor of Trispan. It specifically alleges that the trial court chose the wrong contract to apply to this case. EC believes that the parties' credit application agreement is the appropriate contract. This argument is without merit.
 {¶ 9} EC argues that the parties' July 11, 2002 credit agreement constitutes the contract between the parties that governs this matter. Trispan argues that the work order was the contract between the parties to repair the crane, but that there is no contract governing third-party repairs between the parties.
 {¶ 10} "The elements of a contract are offer and acceptance, supported with valid consideration." Noroski v. Fallet (1982), 2 Ohio St.3d 77,79, 442 N.E.2d 1302. "While the interpretation of the terms of a contract is undertaken as a matter of law, the existence of a contract is a question for the trier of fact." Gruenspan v. Seitz (1997),124 Ohio App.3d 197, 705 N.E.2d 1255.
 {¶ 11} Because the parties dispute the existence of a contract, the issue is a question of fact, to which we apply a manifest weight standard. It is well established that when some competent, credible evidence exists to support the judgment rendered by the trial court, an appellate court may not overturn that decision unless it is against the manifest weight of the evidence. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80, 461 N.E.2d 1273.
 {¶ 12} The knowledge a trial court gains through observing the witnesses and the parties in any proceeding (i.e., observing their demeanor, gestures and voice inflections and using these observations in weighing the credibility of the proffered *Page 6 
testimony) cannot be conveyed to a reviewing court by a printed record.Trickey v. Trickey (1952), 158 Ohio St. 9, 13, 106 N.E.2d 772. In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct.Seasons Coal Co., supra. As the Ohio Supreme Court has stated, "it is for the trial court to resolve disputes of fact and weigh the testimony and credibility of the witnesses." Bechtol v. Bechtol (1990),49 Ohio St.3d 21, 550 N.E.2d 178.
 {¶ 13} A review of the record shows the trial court appropriately concluded that EC failed to demonstrate there was an agreement between the parties that required Trispan to pay for third-party repairs to EC's swivel can. First, we find that the July 2002 credit agreement did not govern the parties' dispute and clearly did not give permission for EC to make unlimited third-party repairs at Trispan's expense. The credit agreement's terms and conditions cover invoice due dates, delinquent accounts, attorney's fees, and venue. The credit agreement does not address repairs in general, let alone the specific repairs done in this matter. In fact, the credit agreement only covers the purchase of the crane itself. According to Trispan president, Richard Day, he signed a credit application in July 2002 in order "to get credit to buy the [crane] originally."
 {¶ 14} Although it seems that EC is alleging that the credit agreement governs any invoice between the parties at anytime, this argument is illogical and impractical. If we followed EC's argument, we would have to find that anytime EC *Page 7 
performed work on Trispan's equipment, with or without authorization, Trispan would be liable for costs.
 {¶ 15} We next find that the work order also does not evidence a contract for third-party repairs. The work order, while it may have evidenced a contract between the parties to repair the crane, clearly did not govern third-party repairs. In fact, even EC service manager, Kevin Whelan, testified that the work order mentioned nothing about third-party repairs.
 {¶ 16} Because neither the credit application nor the work report addressed third-party repairs, EC has to prove the existence of either another written or oral contract if it wants to hold Trispan liable for the additional repairs. Clearly, EC has not even alleged, let alone produced, evidence of any additional written contract.
 {¶ 17} EC also has not demonstrated the existence of an oral contract. In order to prove that an oral contract existed, EC needed to show that a meeting of the minds existed. Schwartz v. Comcorp, Inc.
(1993), 91 Ohio App.3d 639, 633 N.E.2d 551. For example, EC would have had to introduce evidence that one of its representatives verbally informed a Trispan representative that the work order only represented the work EC did itself and that additional work had to be done by Ohio CAT. EC would also have to prove that it informed Trispan that it would be liable for any additional costs. Finally, EC would have to present evidence that Trispan accepted these terms.
 {¶ 18} No EC representatives testified that Trispan had been told it would be liable for third-party repairs, and Trispan's president Day testified he did not know *Page 8 
that EC had to make the additional repairs. In fact, at trial, EC's service manager, Kevin Whelan, even admitted that he had never informed Trispan that EC was sending the swivel can to Ohio CAT. Trispan's attorney asked Mr. Whelan if "anything on your work order indicat[ed] that you intended to send this swivel to Ohio CAT for repair?" Mr. Whelan responded, "No."
 {¶ 19} Trispan's president Day also testified he did not have knowledge that EC had exchanged its swivel can with Trispan's damaged one. According to Day, the first time he heard about EC using its own spare swivel can was in September after he received the second invoice. All Day knew was that EC repaired his crane and invoiced him for the cost of repair. Day testified that he was under the impression that the invoice was final.
 {¶ 20} In sum, EC has not produced evidence of a written or oral contract evidencing an agreement between the parties that would require Trispan to pay for additional repairs made by Ohio CAT. EC did not orally contract with Trispan for these repairs, nor did the original work order or invoice indicate that further repairs needed to be done. As far as Trispan was concerned, the repair had been made and the invoice had been paid. Finally, it is clear that the 2002 credit application is inapplicable to the case at bar because that application only dealt with the credit Trispan needed in order to purchase the crane. Although EC was demonstrating commendable customer service when it decided to switch the swivel cans to save Trispan time, unfortunately, this does not satisfy EC's burden of showing the existence of a contract governing third-party repairs. *Page 9 
 {¶ 21} In addition to its argument that the credit agreement constitutes the contract in this case, EC also alleges that no contract existed and that the equitable doctrine of unjust enrichment applies. We find that EC waived its unjust enrichment claim when, at the beginning of the trial, both attorneys notified the judge that they would like to proceed on the issue of contract alone. The parties informed the judge that they each believed a contract existed, but did not agree as to which contract controlled (EC believing that the credit application governed and Trispan believing that the work order controlled). Accordingly, EC waived its unjust enrichment argument.[2]
 {¶ 22} Having found that there is no contract governing third-party repairs and that unjust enrichment does not apply in this case, we overrule EC's assignment of error.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
 The court finds there were reasonable grounds for this appeal. *Page 10 
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
CHRISTINE T. McMONAGLE, P.J., and MELODY J. STEWART, J., CONCUR
[1] The remaining charges reflected repairs to other parts of the crane, including a brake booster, a jack cylinder, and a strand cable.
[2] Even if EC had not waived its unjust enrichment claim, the claim would fail. In a claim for unjust enrichment, EC must prove that it conferred a benefit on Trispan, which had knowledge of the benefit, and that circumstances rendered it unjust to permit Trispan to retain the benefit. Hambleton v. R.G. Barry Corp. (1984), 12 Ohio St.3d 179, 183,465 N.E.2d 1298. Importantly, EC must have conferred the benefit because of Trispan's fraud, misrepresentation, or bad faith. Nat'l CityBank v. Fleming (1981), 2 Ohio App.3d 50, 58, 440 N.E.2d 590. In other words, causation must exist between the loss and benefit. Elbert v.West (Aug. 20, 1986), Lorain App. No. 3985.
It is clear that EC conferred a benefit upon Trispan when it fixed the crane. However, the transcript does not establish that Trispan had knowledge that additional third-party repairs were being made. Further, it is clear that there is no evidence that Trispan received a benefit due to its own fraud, misrepresentation, or bad faith. *Page 1