[Cite as *Skerlec v. Ganley Chevrolet, Inc.*, 2012-Ohio-5748.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 98247**

---

## JAMES E. SKERLEC, JR.

PLAINTIFF-APPELLANT

vs.

## GANLEY CHEVROLET, INC., ET AL.

DEFENDANTS-APPELLEES

---

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

---

Civil Appeal from the

Cuyahoga County Court of Common Pleas
Case No. CV-768477

**BEFORE:**   Boyle, P.J., Cooney, J., and Kilbane, J.

**RELEASED AND JOURNALIZED:**    December 6, 2012

**ATTORNEYS FOR APPELLANT**

Joseph J. Triscaro
Robert P. DeMarco
DeMarco & Triscaro, Ltd.
30505 Bainbridge Road
Suite 225
Solon, Ohio 44139

**ATTORNEYS FOR APPELLEES**

Gregory A. Gordillo
Michael J. Gordillo
Gordillo & Gordillo, LLC
1370 Ontario Street
Suite 2000
Cleveland, Ohio 44113

A. Steven Dever
Law Offices of A. Steven Dever Co., LPA
13363 Madison Avenue
Lakewood, Ohio 44107

MARY J. BOYLE, P.J.:

{¶1} Plaintiff-appellant, James E. Skerlec, Jr. ("Skerlec"), appeals the trial court's granting the motion to stay pending arbitration filed by defendant-appellees, Ganley Chevrolet, Inc., and Ganley Chevrolet of Aurora,

LLC (collectively referred to as "Ganley"). Finding some merit to the appeal, we affirm in part and reverse in part.

Procedural History and Facts

{¶2} Ganley hired Skerlec as an automotive technician in August 2009. Shortly thereafter, Skerlec joined the International Association of Machinists and Aerospace Workers, Local Lodge 163 ("the Union"). On June 28, 2011, following Ganley's and the Union's failure to agree to the terms of a collective bargaining agreement, Ganley called for a vote amongst its automotive technicians "to determine who was for and against the Union." Skerlec was one of five technicians that voted in favor of the Union; three others voted against it. Two days later, a general manager at Ganley accused Skerlec of stealing and offered him two options: resign or be terminated and prosecuted for theft. He refused to resign, and the Portage County prosecutor's office charged him. The Portage County Common Pleas Court later granted a motion to dismiss the charges.

{¶3} As a result of his termination, Skerlec filed suit against Ganley, alleging wrongful discharge in violation of public policy, malicious prosecution, abuse of process, intentional infliction of emotional distress, unlawful wage withholding, and seeking punitive damages. According to Skerlec's complaint, it was customary for the automotive technicians to

gather the scrap metal left-over from servicing vehicles, sell the metal to a scrapping company, and then divide the proceeds between all the technicians. Skerlec alleged that this practice was known by Ganley and never discouraged. Skerlec further alleged that another technician, who had also engaged in the same practice of selling the scrap metal to a scrapping company, was never prosecuted or terminated. This employee, however, had voted against keeping the Union.

{¶4} Ganley moved to dismiss the complaint, arguing that the complaint failed to state sufficient facts to support the claims, which Skerlec opposed. The trial court denied the motion. Ganley subsequently filed a motion to stay asserting that, pursuant to the parties' arbitration agreement, the American Arbitration Association in Cleveland, Ohio should hear and decide the dispute. The trial court agreed, and this appeal now follows.

<u>Motion To Stay</u>

{¶5} In his sole assignment of error, Skerlec contends the trial court erred in granting Ganley's motion to stay pending arbitration. He raises several arguments in support of this claim, namely, (1) that the arbitration provision is not enforceable because it lacks consideration and definite terms, (2) his intentional torts claims fall outside the scope of the provision, and (3)

Ganley waived arbitration by failing to file a motion to stay prior to its filing of a motion to dismiss.

Standard of Review

**{¶6}** The appropriate standard of review depends on "the type of questions raised challenging the applicability of the arbitration provision." *McCaskey v. Sanford-Brown College*, 8th Dist. No. 97261, 2012-Ohio-1543, ¶ 7. Generally, an abuse of discretion standard applies in limited circumstances, such as a determination that a party has waived its right to arbitrate a given dispute. *Id.,* citing *Milling Away, L.L.C. v. UGP Properties, L.L.C.*, 8th Dist. No. 95751, 2011-Ohio-1103, ¶ 8. But the issue of whether a party has agreed to submit an issue to arbitration or questions of unconscionability are reviewed under a de novo standard of review. *See Shumaker v. Saks Inc.*, 163 Ohio App.3d 173, 2005-Ohio-4391, 837 N.E.2d 393 (8th Dist.); *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12.

**{¶7}** We therefore afford no deference to the trial court's finding that a valid contract exists and apply a de novo review to this issue. We likewise apply a de novo review in determining the scope of the arbitration provision. As for the trial court's determination that Ganley did not waive its right to arbitrate, we apply an abuse of discretion.

Enforceability of the Arbitration Provision

**{¶8}** An arbitration agreement is an expression that the parties agree to arbitrate disagreements within the scope of the contract. *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 471, 700 N.E.2d 859 (1998). Thus, prior to making any determination regarding the arbitrability of any issue, a court must first determine whether the arbitration agreement is enforceable under basic contract precepts. *Council of Smaller Ents. v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 665, 687 N.E.2d 1352 (1998).

**{¶9}** For a valid contract to exist, there must be an offer, an acceptance of the offer, and consideration. *All Erection & Crane Rental Corp. v. Trispan Corp.*, 8th Dist. No. 91471, 2009-Ohio-867, ¶ 10, citing *Noroski v. Fallet*, 2 Ohio St.3d 77, 79, 442 N.E.2d 1302 (1982). "Consideration may consist of either a detriment to the promisee or a benefit to the promisor." *Lake Land Emp. Group of Akron, LLC v. Columber*, 101 Ohio St.3d 242, 2004-Ohio-786, 804 N.E.2d 27, ¶ 16, citing *Irwin v. Lombard Univ.*, 56 Ohio St. 9, 19, 46 N.E. 63 (1897). The Ohio Supreme Court has held that giving up a right to trial, in addition to the corresponding rights of that judicial process, is

consideration. *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 42-43.

**{¶10}** Skerlec argues the arbitration agreement is not enforceable because he never agreed to it when he was hired. He implies that because he signed the agreement the day after he was hired, it lacked consideration and is unenforceable. In support of this argument, Skerlec relies on *Harmon v. Philip Morris Inc.*, 120 Ohio App.3d 187, 697 N.E.2d 270 (8th Dist.1997). In *Harmon*, this court found that an employee's signature acknowledging receipt of the arbitration brochure did not constitute an enforceable arbitration agreement.

**{¶11}** However, *Harmon* is easily distinguished from the instant case. Although Harmon's continued employment was contingent on his signing and acknowledging receipt of the arbitration brochure, the court found there was not an enforceable agreement because:

> [T]he terms of this program require employees to arbitrate their claims against Philip Morris but do not similarly require Philip Morris to arbitrate its claims against them; and, since Philip Morris reserves the right to amend or terminate this program at any time, it has neither offered a benefit to its employees nor incurred any detriment by modifying the terms of the employment relationship. Thus, no consideration flowed from the employer to the employees to compensate them for relinquishing their individual and collective rights to present their claims to a jury in a court of law because they remained at-will employees following implementation of the program,

subject to termination but without the right to seek redress from a jury.

{¶12} Here, both parties agreed to submit any unresolved complaint of "workplace wrongdoing." The arbitration provision is titled "Arbitration Agreement" and provides, in pertinent part:

> The employee understands that it is the goal of the dealership to resolve any complaints of workplace wrongdoing. Any such complaints may be made directly to the department manager or General Manager or may be made to the independent third party, Labor Consultants of America, through the Employee Protection Line. The employee agrees that, if any complaint of workplace wrongdoing remains unresolved, any resulting legal claim of wrongdoing **shall be submitted by the employee and the dealership** to the American Arbitration Association in Cleveland, Ohio.

(Emphasis added.)

{¶13} Unlike *Harmon*, where Philip Morris offered no consideration to Harmon to accept its offer modifying the terms of employment, Ganley agreed to waive its right to a jury trial in exchange for Skerlec's similar promise. Unlike the arbitration provision at issue in *Harmon*, there is nothing in the instant arbitration agreement that would allow Ganley to unilaterally modify the terms of the arbitration agreement. No consideration is required above and beyond the mutual agreement to arbitrate. *Corl v. Thomas & King*, 10th Dist. No. 05AP-1128, 2006-Ohio-2956, ¶ 20, citing *Dantz v. Apple Ohio LLC*, 277 F.Supp.2d 794 (N.D.Ohio 2003).

{¶14} Skerlec further argues the arbitration agreement is unenforceable because it fails to define material terms. He contends the parties are not identified, and the terms "workplace wrongdoing" and "dealership" are vague.

{¶15} The parties are obviously Skerlec and Ganley. Although the terms "workplace wrongdoing" and "dealership" are not defined, they are easily understood according to their plain, ordinary meaning. Where terms in a contract are not defined, courts apply the plain and ordinary meaning of words to determine the parties' intent. *Penn Traffic Co. v. AIU Ins. Co.*, 99 Ohio St.3d 227, 2003-Ohio-3373, 790 N.E.2d 1199, ¶ 9. The term "dealership" can only refer to Ganley because no other dealerships were party to the contract. *Webster's* defines "wrongdoing" as "any act or behavior that is wrong." *Webster's New World Dictionary* 1543 (3d College Ed). It defines "wrong," in part as "unlawful, immoral or improper." *Id.* The plain language of the arbitration agreement contemplates that any legal claims arising from improper behavior between the employee and the employer/dealership in the workplace should be submitted to arbitration.

{¶16} But while we do not find that the terms of the arbitration provision are so lacking to render the contract unenforceable, we do find that

by applying the terms in their context, the three alleged intentional torts clearly fall outside the scope of the provision.

Scope of the Arbitration Provision

**{¶17}** Skerlec argues that the arbitration agreement is inapplicable to many of his claims because it does not include intentional torts. He argues that his claims for malicious prosecution, abuse of process, and intentional infliction of emotional distress do not fall within the scope of the arbitration agreement. We agree.

**{¶18}** While we acknowledge that Skerlec is raising this argument for the first time on appeal, we find that R.C. 2711.02(B) requires a trial court to stay a matter for arbitration only *upon being satisfied* that "the issue involved in the action is referable to arbitration under an agreement in writing for arbitration." Therefore, a trial court has an independent duty to determine that the claims involved are subject to the arbitration provision before it can issue a stay. *Id.* Moreover, an "arbitrator has no authority to decide issues which, under their agreement, the parties did not submit to review." *State Farm Mut. Ins. Co. v. Blevins*, 49 Ohio St.3d 165, 166, 551 N.E.2d 955 (1990).

**{¶19}** Here, we agree that the plain language of the arbitration provision does not cover intentional torts relating to the employer's alleged

conduct outside the employment relationship. The arbitration provision specifically limits the scope of the arbitration provision to "workplace wrongdoing." The alleged intentional torts of Ganley that occurred outside of the workplace do not fall within the plain meaning of "workplace wrongdoing." Moreover, to the extent that this term is ambiguous, we must interpret the ambiguity against the drafter of the contract — Ganley. *See Piening v. Ent. Rent-a-Car of Cincinnati, Inc.*, 1st Dist. No. C-060535, 2007-Ohio-4709.

{¶20} As for Ganley's claim that the alleged intentional torts flow from Skerlec's alleged theft in the workplace, we find this reasoning flawed. Ganley is not seeking to invoke this arbitration provision to address the alleged theft, i.e., "the wrongdoing," by Skerlec. The intentional torts at issue all relate to Ganley's alleged conduct outside of the workplace, i.e., frivolously seeking a criminal prosecution against Skerlec. And while there is a nexus between the parties and the claims by virtue of their former employment relationship, the arbitration provision does not encompass all claims between the employer and employee under every circumstance. Instead, the arbitration provision clearly is limited to those claims related to "workplace wrongdoing."

{¶21} Despite the strong presumption in favor of arbitration, parties cannot be compelled to arbitrate a dispute that they have not agreed to submit to arbitration. *Council of Smaller Ents.,* 80 Ohio St.3d at 665, 687 N.E.2d 1352; *see also Marks v. Morgan Stanley Dean Witter Commercial Fin. Servs.,* 8th Dist. No. 88948, 2008-Ohio-1820. Based on the plain language of the arbitration provision, we find that the three intentional torts alleged fall outside its scope and should not have been stayed. **Accordingly, we sustain the first assignment of error in part.**

<u>Waiver</u>

{¶22} Skerlec further argues that Ganley waived its right to arbitration by filing a motion to dismiss before its motion for stay. He suggests that by filing the motion to dismiss, Ganley invoked the court's jurisdiction. In support of his argument, Skerlec relies on *Mauk v. Washtenaw Mtg. Co.,* 5th Dist. No. 03CA0019, 2003-Ohio-4394. In *Mauk,* the court found that the defendant waived his right to arbitration by filing a motion to dismiss, engaging in discovery, filing a motion for protective order, and waiting to raise the issue of arbitration for over seven months after the complaint was filed. *Id.* at ¶ 15.

{¶23} In *Church v. Fleishour Homes, Inc.,* 172 Ohio App.3d 205, 2007-Ohio-1806, 874 N.E.2d 795 (5th Dist.), the same court reached the

opposite conclusion and found that the defendant preserved its right to arbitration under the circumstances presented in that case. In distinguishing *Mauk*, the *Church* court explained that the defendant promptly asserted the arbitration provision as an affirmative defense in its answer. *Id.* at ¶ 82. The *Church* court further explained that when determining whether arbitration has been waived: "'The essential question is whether, based on the totality of the circumstances, the party seeking arbitration has acted inconsistently with the right to arbitrate.'" *Id.* at ¶ 80, quoting *Harsco Corp. v. Crane Carrier Co.*, 122 Ohio App.3d 406, 410, 701 N.E.2d 1040 (3d Dist.1997).

{¶24} In determining whether a defendant acted inconsistently with arbitration, this court has held that the trial court should consider:

> (1) any delay in the requesting party's demand to arbitrate via a motion to stay judicial proceedings and an order compelling arbitration; (2) the extent of the requesting party's participation in the litigation prior to its filing a motion to stay the judicial proceeding, including a determination of the status of discovery, dispositive motions, and the trial date; (3) whether the requesting party invoked the jurisdiction of the court by filing a counterclaim or third-party complaint without asking for a stay of the proceedings; and (4) whether the non-requesting party has been prejudiced by the requesting party's inconsistent acts.

*Phillips v. Lee Homes, Inc.*, 8th Dist. No. 64353, 1994 Ohio App. LEXIS 596 (Feb. 17, 1994), citing *Rock v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*,

79 Ohio App.3d 126, 606 N.E.2d 1054 (8th Dist.1992); *Brumm v. McDonald &*
*Co. Secs., Inc.,* 78 Ohio App.3d 96, 603 N.E.2d 1141 (4th Dist.1992).

{¶25} Contrary to Skerlec's assertion, the mere filing of a motion to
dismiss alone does not operate as a waiver of a party's right to arbitrate.  *See*
*Bayer v. Mapes*, 8th Dist. No. 66541, 1994 Ohio App. LEXIS 5156 (Nov. 17,
1994).  Indeed, a motion for a stay pending arbitration does not raise any of
the defenses specifically enumerated in Civ.R. 12(B)(1) to (7), and such
motion therefore need not be filed prior to filing a motion to dismiss.  *Id.*

{¶26} Skerlec filed the complaint on November 4, 2011.  Ganley was
served with the complaint in mid-November.  After receiving leave to plead,
Ganley filed a motion to dismiss pursuant to Civ.R. 12(B)(6) on January 13,
2012 , arguing that the complaint failed to state a claim upon which relief
could be granted.  Once the motion to dismiss was denied, Ganley promptly
filed the motion for stay, four months after the complaint was filed and four
months before the court's dispositive motion deadline.

{¶27} Here, the record indicates that Ganley did not participate in the
litigation.  Ganley did not engage in discovery or file any counterclaims, but
promptly requested the stay once the court denied the motion to dismiss.
Based on the totality of the circumstances, Ganley acted consistently with its

right to arbitrate, and we cannot say that the trial court abused its discretion in finding that Ganley had not waived arbitration.

{¶28} In summary, we find some merit to Skerlic's sole assignment of error. The three intentional torts fall outside the arbitration provision and therefore should not have been stayed. His other claims, i.e., wrongful discharge and wage withholding, however, are subject to a valid and enforceable arbitration provision, and therefore the trial court properly granted Ganley's motion to stay with respect to these claims.

{¶29} Judgment affirmed in part, reversed in part, and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that the parties share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, PRESIDING JUDGE

MARY EILEEN KILBANE, J., CONCURS;
COLLEEN CONWAY COONEY, J., CONCURS IN JUDGMENT ONLY
IN PART AND DISSENTS IN PART WITH SEPARATE OPINION

COLLEEN CONWAY COONEY, J., CONCURRING IN JUDGMENT ONLY IN PART, DISSENTING IN PART:

{¶30} I concur in the judgment to affirm the trial court. I respectfully dissent in the partial reversal to exclude certain claims from the arbitration process.

{¶31} Skerlec objected to arbitration on three grounds: the agreement was invalid for lack of consideration, the terms were vague, and Ganley waived its right to arbitrate by filing a motion to dismiss. His failure to raise in the trial court his current argument that certain claims are excluded from arbitration constitutes a waiver of his objection.

{¶32} As this court recently found:

> A litigant's failure to raise an argument in the trial court waives the litigant's right to raise the issue on appeal. *Shover v. Cordis Corp.* (1991), 61 Ohio St.3d 213, 220, 574 N.E.2d 457, overruled on other grounds in *Collins v. Sotka* (1998), 81 Ohio St.3d 506, 1998-Ohio-331, 692 N.E.2d 581; *Maust v. Meyers Products, Inc.* (1989), 64 Ohio App.3d 310, 581 N.E.2d 589 (failure to raise an issue in the trial court waives a litigant's right to raise that issue on appeal). Because Foster failed to raise these claims in the trial court, he has waived these claims on appeal.

*Foster v. Wells Fargo Fin. Ohio, Inc.*, 195 Ohio App.3d 497, 2011-Ohio-4632, ¶ 24 (8th Dist.).

{¶33} Furthermore, the arbitration agreement is not limited to only claims of "workplace wrongdoing." Rather, the agreement states that it covers any unresolved complaints of "workplace wrongdoing" as well as "any

resulting legal claim of wrongdoing." In other words, the agreement encompasses any claims that occur as a result of alleged workplace wrongdoing.

{¶34} Here, Ganley terminated Skerlec's employment because of his alleged theft in the workplace. Skerlec's claims for wrongful termination, malicious prosecution, abuse of process, and intentional infliction of emotional distress arise from prosecuting his alleged "workplace wrongdoing," i.e., the alleged theft. They are within the scope of the arbitration agreement and should be submitted to arbitration because they are "resulting legal claims" from the wrongdoing.

{¶35} Therefore, I would affirm in toto.